Argued July 11, decided July 18, 1911.

# DAKIN v. QUEEN CITY FIRE INSURANCE CO.

[117 Pac. 419.]

EVIDENCE—OPINION EVIDENCE—MATTERS OF OPINION OR FACTS.

1. In an action on a fire insurance policy, testimony that the witness examined a stock of drugs and estimated its value was not competent to establish its value, where it did not appear that he had any special knowledge as to drugs.

APPEAL AND ERROR—HARMLESS ERROR—ADMISSION OF EVIDENCE.

2. Where incompetent evidence as to the valuation of a stock of drugs before insurance was admitted, in an action on the policy, but such valuation had little bearing on the worth of the stock when destroyed, the admission was not prejudicial.

EVIDENCE—OPINION EVIDENCE—VALUE.

3. Persons of ordinary intelligence, who have seen the shelving, counters, showcases, etc., of a store, are competent to give an estimate of their value.

INSURANCE—VALUE OF PROPERTY DESTROYED.

4. The value of insured goods at the time of their destruction is the measure of indemnity for the loss, under a policy stipulating for indemnity to the extent of a fixed sum.

EVIDENCE—RELEVANCY—VALUE OF PROPERTY.

5. In an action on a policy of fire insurance, evidence that a safe injured by the fire cost $300 about three years before, and that a transportation charge of $100 had been paid, is properly admitted.

EVIDENCE—PRIVATE WRITINGS—LETTERS—CORRESPONDENCE.

6. In an action on a fire policy, letters between attorneys for plaintiff and defendant, relating to the contentions of the respective parties for and against the payment of loss, are inadmissible, since the reasons set forth therein might have been orally argued by counsel, and the facts to which the letters related could have been shown by witnesses.

TRIAL—OBJECTION TO EVIDENCE—EVIDENCE INADMISSIBLE IN PART.

7. Where a motion to strike out went to the whole of an exhibit, consisting of two sheets of paper, one of which was admissible, the motion was properly denied.

INSURANCE—FORFEITURES—LIBERAL CONSTRUCTION.

8. A clause in a policy requiring proof of loss within a certain time, to entitle the insured to maintain an action, will be liberally construed in favor of the insured.

INSURANCE—FORFEITURE OF POLICY—CONDITIONS SUBSEQUENT.

9. A non-compliance with a clause of a fire policy, providing that proofs of loss should be made within 60 days, and that no action on the policy should be sustainable until full compliance with such requirements, without expressly declaring that the policy should be void for failure to submit the required proofs of loss, does not render the policy void, but requires the furnishing of proofs before instituting an action.

INSURANCE—ACTION ON POLICY—ADMISSIBILITY OF EVIDENCE—PROOFS OF LOSS.

10. When a clause of a policy which requires that proofs of loss shall be made within a certain time, without expressly declaring the policy void for failure to make proofs as required, is so construed as not to render the policy void, evidence as to proofs of loss made to the insurer's general agent within the required time, the agent's promise to send insured formal proof of loss, and that the agent's failure to do so occasioned a delay in making additional proof, is admissible.

INSURANCE—ISSUES—MATTERS TO BE PROVED.

11. Plaintiff's averment, in an action on a policy of insurance, of delay in offering proofs of loss, and the statement of the reason therefor, constitute matter of inducement, and are immaterial, and a denial thereof does not raise issues as to delay and the reason therefor; and hence an instruction excluding such issues is not erroneous.

From Multnomah: WILLIAM N. GATENS, Judge.

Statement by MR. JUSTICE MOORE.

This is an action by R. H. Dakin against the Queen City Fire Insurance Company, of Sioux Falls, South Dakota, a corporation, to recover the amount of an insurance policy. It is alleged in the complaint in effect that defendant is a corporation, and on June 17, 1908, in consideration of the payment of the required premium, it issued to plaintiff a policy stipulating to indemnify him against injury by fire, occurring within a year, to a stock of drugs, etc., and to the store and fixtures in which the medicines were kept at Mt. Angel, Oregon, to the extent of $700 and $500, respectively; that about September 1, 1908, the insured property was wholly destroyed by fire, and defendant was immediately notified thereof, whereupon its general agent, John C. Fox, came to adjust the loss, and plaintiff furnished him a written statement of the property consumed, as nearly as he could from memory, all his books and papers having been destroyed, and such agent promised to make out, from the memoranda submitted, formal proof of loss and return the same to plaintiff for signature and verification; that Fox failed to keep such promise, but plaintiff relying thereon did not make out or sign any other memorandum of loss until March, 1909, when he delivered to defendant a

detailed, written and verified statement thereof, which was returned to him, whereupon he prepared and submitted amended proof; that plaintiff had kept and performed all the conditions of the policy required of him, except the making of the proof of loss within 60 days after the fire, and his delay in this respect was caused by the conduct and promises of defendant; and that no other insurance was ever placed on any of the property, the value of which at the time of the fire exceeded $1,200, for which sum judgment was demanded.   The answer admitted that the defendant is a corporation; that it executed the policy mentioned; that the insured property was totally destroyed August 30, 1908; and that plaintiff did not sign or submit any proof of loss until March 29, 1909, when the memoranda furnished was returned because of insufficiency and another was supplied April 27th following, which was equally defective.   The other averments of the complaint are denied generally.   For separate defenses certain conditions of the policy were set forth and breaches thereof averred, but all the stipulations are abandoned, except the one relating to the proof of loss.   The reply having denied the allegations of new matter in the answer, the cause was tried, resulting in a judgment for plaintiff in the sum of $1,000, and defendant appeals.                                        AFFIRMED.

For appellant there was a brief over the names of *Mr. U. S. G. Cherry* and *Messrs. Wilbur & Spencer,* with an oral argument by *Mr. Wilfred E. Farrell.*

For respondent there was a brief over the names of *Messrs. Cake & Cake,* with an oral argument by *Mr. H. M. Cake.*

MR. JUSTICE MOORE delivered the opinion of the court.

1, 2. It is maintained that an error was committed in permitting the defendant's agent who solicited the insurance to testify, over objection and exception, respecting

the value of a stock of drugs, medicines, etc., when it appeared that he had no special knowledge of that class of goods. M. J. Van Valkenberg, as plaintiff's witness, testified that before the policy was issued he, as defendant's agent, examined the goods and fixtures involved herein and estimated their values at $1,200 and $1,000, respectively. It does not appear that this agent had any special knowledge of the value of the stock of goods, and if his estimate thereof was limited to the value at the time of the fire it is possible that the error in permitting him to testify in relation thereo might have been prejudicial. It is fair to assume that the value of a stock of goods kept for sale will constantly fluctuate, and that the worth will be increased or diminished by the sale and replenishing of the merchandise. Since the indemnity for the loss of the goods by fire was placed at $700, it may be supposed that the agent considered the merchandise of an equal or a greater value when the policy was issued. The fact that Van Valkenberg saw the drugs, medicines, etc., contained in bottles, boxes, and packages would not enable him to estimate the worth of that class of goods, unless he had some special knowledge in relation thereto. A person who had never heard or read of a diamond would be a very poor judge of the value of such a precious gem when first seen by him. We believe that Van Valkenberg was not competent to estimate the worth of the drugs, but, as the value which he placed thereon had but little bearing on the worth of the stock of goods destroyed by fire, the error was not prejudicial.

3. The appraisement made by such agent of the fixtures which were burned stands on a different footing. The shelving, counters, showcases, etc., were not sold. They were, however, in such general use that persons of ordinary intelligence who had seen them ought to be able to give a fair estimate of their worth. *Ruckman* v. *Imbler Lumber Company*, 42 Or. 231 (70 Pac. 811). If an opin-

ion were based on a hypothetical question as to the value of such goods, Van Valkenberg's judgment might not have been sufficient, but as he saw the fixtures he must have had some reasonable conception of their worth. In any event, his estimate, in our opinion, is not so prejudicial as to necessitate a reversal of the judgment.

4, 5. The plaintiff having been permitted over objection and exception, to testify that a safe injured by the fire cost $300 in Chicago, in 1905, and that he paid freight charges thereon of $100, it is maintained that an error was thereby committed. The value of insured goods at the time of their destruction by or injury from fire affords the measure of indemnity for the loss. A fireproof or a burglar proof safe is not subject to deterioration by ordinary use, as are many articles of merchandise kept in a store, so that the cost of a safe may furnish its fair value, unless it has been supplanted by a more modern or superior strong box, or its price lessened by competition. The defendant's counsel had an opportunity, on cross-examination of plaintiff, to show the reasonable worth of the safe at the time of the fire, so that in permitting him to testify as to the cost of and transportation charges upon the safe no error was committed.

6. It is contended that certain correspondence between plaintiff's attorneys and defendant's general attorney and between them and John C. Fox, its general agent, should have been received in evidence, and that in excluding this epistolary intercourse errors were committed. The letters chiefly relate to arguments adduced by the respective parties for and against the payment of the loss produced by the fire, and the reasons for and effect of not making proof of loss within the time prescribed. The reasoning thus set forth could as well have been orally made by counsel at the trial, as was probably done, and any statement of fact contained in the letters could have been detailed by witnesses called for that purpose. The let-

ters, in our opinion, were inadmissible, and no errors were committed in refusing to receive them.

7. The plaintiff testified that soon after the fire John C. Fox visited Mt. Angel and conferred with him regarding the loss; that lists of the furniture burned were made out by each and compared, to see that they were identical; and that the general agent took one of the schedules, while the witness retained the other. There was then received in evidence, over objection and exception, plaintiff's Exhibit B, consisting of two sheets of paper, on the first of which was written with a pen: "Statement of the fixtures and the amount allowed by Mr. Fox while here." Immediately below appears a list of articles of furniture and the respective values thereof aggregating $884.55. At the foot of the page, the following memorandum appears:

"Mr. Fox allowed on the above $442.27, claiming that they would only be worth half on account of being used and secondhand at the time of the fire."

The second sheet is entitled: "Copy of list of fixtures as taken by Mr. Fox and price allowed by him." Here follows a duplicate list of articles of furniture and the value thereof, as stated on the first page.

On cross-examination, plaintiff's attention was called to Exhibit B, and he stated upon oath that such lists were copied by him in ink from a schedule which he made with a lead pencil, and, referring to the sheet of paper which contained the memorandum of the sum allowed by the general agent, defendant's counsel inquired:

"Q. You and Fox sat down together, now didn't you?

"A. Yes, sir.

"Q. And you made lead pencil copies of all these things here?

"A. Yes; I copied it with ink afterwards.

"Q. And after Fox went away you copied it in ink?

"A. Copied mine, and he had his with him. I think maybe that is the way it is."

Defendant's counsel thereupon moved to strike out the exhibit, on the ground that it contained a self-serving declaration. Plaintiff's counsel, resisting the motion, inquired of their client:

"Referring to the second page of Exhibit B, was that made out at the same time that the first page was?"

And the witness replied:

"No, sir.

"Q. When was that made out?

"A. This was made out at the time Mr. Fox was down there at Mt. Angel, adjusting the matter.

"Q. In his presence?

"A. Yes, sir; right before him.

"Q. And that is the one that you kept?

"A. Yes, sir; I sent the top page to Mr. Cake [his attorney]."

The court having refused to strike out Exhibit B, it is asserted by defendant's counsel that an error was committed. It will be remembered that the exhibit consists of two sheets of paper, the first of which had been prepared by plaintiff and sent to his attorney, and was inadmissible; but, as the motion to strike out assailed the entire piece of evidence, one part of which was admissible, no error was committed in denying the request.

8-10. It is contended that an error was committed in permitting the plaintiff, over objection and exception, to testify, in substance, that, pursuant to agreement with Mr. Fox, he sent, in proper time, a schedule of the goods in the store when it burned, as near as he could recollect, a copy of which list was received in evidence, containing items respectively valued, amounting to $1,830.90; that Fox promised upon the receipt of such inventory that he would prepare and send to the witness formal proof of loss, but neither he nor the defendant had ever complied therewith, and that such failure occasioned the delay in making other proof, which was not submitted until March, 1909.

The policy issued to plaintiff contained on the face thereof a clause to the effect that it was subject to all the stipulations and conditions printed on page 2 thereof; "and no officer, agent or other representative of this company shall have power to waive any provision or condition of this policy, except such as, by the terms of this policy, may be the subject of agreement indorsed hereon or added hereto; and as to such provisions and conditions, no officer, agent or representative, shall be deemed or held to have waived such provision or condition, unless such waiver, if any, shall be written upon or attached hereto, nor shall any privilege or permission affecting the insurance under this policy exist or be claimed by the insured unless so written or attached." The conditions referred to provided, in substance, that the policy should be void if the insured concealed or misrepresented any material fact concerning the insurance; or if he then had or thereafter procured any other insurance upon the property; or, upon renewal of the policy, if the hazard were increased without knowledge of the company. These are the only express stipulations whereby the contract of insurance might be rendered ineffectual.

The following clauses are printed on page 2 of the policy:

"If fire occur, the insured shall give immediate notice of any loss thereby in writing to this company, protect the property from further damage, forthwith separate the damaged and undamaged personal property, put it in the best possible order, make a complete inventory of the same, stating the quantity and cost of each article and the amount claimed thereon; and, within 60 days after the fire, unless such time is extended in writing by this company, shall render a statement to this company, signed and sworn to by said insured, stating the knowledge and belief of the insured as to the time and origin of the fire; the interest of the insured and of all others in the property; the cash value of each item thereof and the amount of loss thereon; all encumbrances (incum-

brances) thereon; all other insurance, whether valid or not, covering any of said property; and a copy of all the descriptions and schedules in all policies; any changes in the title, use, occupation, location, possession or exposures of said property since the issuing of this policy; by whom and for what purpose any building herein described and the several parts thereof were occupied at the time of the fire; and shall furnish, if required, verified plans and specifications of any building, fixtures or machinery destroyed or damaged; and shall also, if required, furnish a certificate of the magistrate or notary public (not interested in the claim as a creditor or otherwise not [nor] related to the insured) living nearest the place of fire, stating that he has examined the circumstances and believes the insured has honestly sustained loss to the amount that such magistrate or notary public shall certify. The insured, as often as required, shall exhibit to any person designated by this company all that remains of any property herein described, and submit to examination under oath by any person named by this company, and subscribe the same; and, as often as required, shall produce for examination, all books of accounts (account), bills, invoices and other vouchers, or certified copies thereof, if originals be lost, at such reasonable place as may be designated by this company or its representative, and shall permit extracts and copies thereof to be made. * * No suit or action on this policy, for the recovery of any claim, shall be sustainable, in any court of law or equity, until after full compliance by the insured with all the foregoing requirements, nor unless commenced within twelve months next after the fire."

It will be observed that while some provisions to which reference has been made declare that the policy shall become void upon certain conditions, the failure to submit proof of loss within 60 days from a fire, when that limit has not been extended, is not within the specifications enumerated. It is a maxim of universal application that forfeitures are not favored. In speaking of the requirement to furnish proof of loss to entitle the insured to maintain an action against the company, a text-writer says:

"But the provisions in the policy in this respect, as in others, are to be liberally construed in favor of the insured." 19 Cyc. 844.

To the same effect, see 4 Joyce, Ins. § 3275. The editors of the American and English Encyclopedia of Law (vol. 13 [2 ed.] 329), in discussing the question under consideration, say:

"And if no forfeiture is provided for in case of failure to furnish proofs, forfeitures being stipulated in case of breach of other requirements, or furnishing the proofs in the specified time is not expressly made a condition precedent to recovery, the great majority of recent decisions hold that the effect of failure to furnish them is merely to postpone the time of payment to the specified time after they are furnished."

This legal principle was followed in *Stinchcomb* v. *N. Y. Life Ins. Co.*, 46 Or. 316 (80 Pac. 213), where, in construing the provisions of a life insurance policy, it was determined that noncompliance with the stipulations in respect to submitting proofs of death within the time specified, where no penalty was attached for a failure to comply therewith, did not render the policy void, but required the furnishing of the proofs, before instituting an action on the contract of insurance. The rule adverted to having been thus recognized is controlling herein, and such being the case no errors were committed in allowing plaintiff to testify respecting the cause of the delay in furnishing proof of loss.

11. An exception having been taken to a part of the general charge, it is maintained that the court erred in instructing the jury as follows:

"There is only one question in this case for you to decide, and that is the question of value of this property at the time of the fire."

It will be kept in mind that the complaint alleged that John C. Fox promised to make out, from memoranda received, formal proof of loss and send the same to

plaintiff, and that the failure of defendant's general agent in this respect necessitated the delay in submitting such proof, which averment is denied generally in the answer. The complaint does not allege that proof of loss was waived in any manner. It seems to be conceded from an examination of plaintiff's primary pleading that a compliance with the requirements of the terms of the policy is essential to the maintenance of this action (*Weidert* v. *State Ins. Co.,* 19 Or. 261: 24 Pac. 242: 20 Am. St. Rep. 809), for it is alleged that such proof was made, though not within the time limited therefor. It might well be claimed that the informal proof submitted by plaintiff to defendant's general agent afforded some evidence of the loss, but, however this may be, more formal manifestation thereof was undertaken. The averment of the delay in offering proof of loss and the statement of the reason therefor constitute a narrative, and like all other historical matters of inducement the allegation was immaterial, and a denial thereof did not raise an issue of fact for trial. *Gardner* v. *McWilliams,* 42 Or. 14, 17 (69 Pac. 915) ; *Fleishman* v. *Meyer,* 46 Or. 267, 271 (80 Pac. 209) ; *Casto* v. *Murray,* 47 Or. 57, 63 (81 Pac. 388, 883). No error was committed in thus charging the jury.

It follows from these considerations that the judgment should be affirmed, and it is so ordered.

Affirmed.