Argued July 14; reargued November 13, 1933; affirmed
February 13, 1934

# HOFFMAN *v.* EMPLOYER'S LIABILITY ASSURANCE CORPORATION

(29 P. (2d) 557)

*F. P. Keenan,* of Portland (Reynolds, Flegel & Smith, of Portland, on the brief), for appellant.

*Randall S. Jones* and *E. L. McDougal,* both of Portland (Lawrence Lister, of Portland, on the brief), for respondent.

RAND, C. J. This is an appeal from a judgment in favor of the plaintiff. The action was brought to recover on a policy of indemnity insurance issued by

the defendant to plaintiff. Except as otherwise provided therein, the policy covers ''bodily injuries, including death at any time resulting therefrom, accidentally sustained by any person or persons other than employees of the Assured by reason of the business operations carried on by the Assured, and at the locations, as described in the Declarations''.

The defense set up in the answer was that the defendant is not liable by reason of plaintiff's nonfulfillment of Condition D, which reads as follows:

''Upon the occurrence of an accident covered by this Policy, the Assured shall give immediate written notice thereof to the Corporation or its duly authorized Agent. The Assured shall give like notice with full particulars of any claim made on account of any such accident. If any suit or other proceeding mentioned in Agreement III is instituted against the Assured on account of any such accident, the Assured shall immediately forward to the Corporation or its duly authorized Agent every notice, summons, or other process served upon the Assured.''

The policy expressly provided that the agreements of the defendant to indemnify the plaintiff ''are subject to the following conditions'', one of which is Condition D above quoted. There is no express provision contained in the policy for forfeiture upon plaintiff's failure to comply with any of said conditions.

It appears from the uncontradicted evidence that an accident covered by the policy occurred at The Dalles, Oregon, on March 10, 1929, while plaintiff was engaged in constructing the Granada Theater building and in laying a cement sidewalk in front of said building. Charles W. Donaca was plaintiff's foreman and in charge of the work at the time of the accident. He had been instructed to report all accidents to plain-

tiff or to plaintiff's general superintendent immediately upon their occurrence. At the close of work on that day, Donaca erected a barricade across the sidewalk, consisting of a 2 x 6-inch plank placed upon the top of one barrel and extending to the inner edge of the sidewalk, and a lighted lantern at the outer edge thereof. About 9:15 o'clock that evening, Mrs. Margaret Sharp, a resident of The Dalles, was walking along the sidewalk with her daughter and, not observing the barricade, stumbled over it and fell, breaking her arm, and she was immediately taken to a hospital for treatment.

On the following morning when Donaca resumed work, he saw that the barricade had been knocked down and made inquiry as to the cause thereof of one of the men employed at the work. Donaca was informed that some woman had fallen over the barricade the evening before, but who she was or the extent of her injuries, if any, was unknown to his informant. Donaca remained at The Dalles for about two weeks and until the job was finished. He made some perfunctory inquiries but was unable to obtain any definite information as to the identity of the person injured or the extent of her injury. He made no report of the accident to plaintiff or to plaintiff's general superintendent.

Plaintiff was not at The Dalles at the time of the accident and never learned of the accident until March of the following year, when he was apprised of the accident by Mrs. Sharp's attorney and was told that a claim for damages would be made. After receiving such notice, and on March 27, 1930, plaintiff notified one of defendant's general agents of the accident and that a claim for damages had been made. This the undisputed evidence shows was the first time defend-

ant had ever received notice of the accident or that a claim for damages had been made on account thereof. Subsequently, Mrs. Sharp sued plaintiff and plaintiff was compelled to pay $2,250 in settlement of her claim, and, upon defendant's refusal to reimburse him under the policy, plaintiff brought the present action and recovered judgment for that amount together with interest, costs and attorney's fees.

Defendant contends that performance by plaintiff of Condition D, under the express terms of the policy itself, was made a condition precedent to liability on defendant's part and that plaintiff's breach of that condition by failing to give notice of the accident for more than one year after its occurrence operates as a matter of law to defeat the right which plaintiff would otherwise have had to be reimbursed for the moneys paid to the injured party in settlement of her claim for damages.

On the other hand, plaintiff contends that performance by him of the condition was not a condition precedent to liability because not so provided in the policy and also because the policy itself contains no express provision of forfeiture. In support of the last point, plaintiff cites *Dakin v. Queen City Fire Ins. Co.*, 59 Or. 269 (117 P. 419). He also contends in his brief that precedent conditions relate only to the formation of contracts and not to liability under them. These contentions will first be noticed.

A condition precedent is one which must be fulfilled before the right to which it is precedent is acquired, or, as otherwise stated, it is one which "must be performed or happen before liability arises on the promise which the condition qualifies": 2 Williston on Contracts, section 666a; 5 Page on Contracts, section 2586. "A condition subsequent", says Page in the

section above cited, "is one the happening of which defeats a contractual right which was in existence when such condition was broken." Williston defines a condition subsequent as follows:

. "The term condition subsequent in contracts as used in contrast to condition precedent must mean subsequent to liability—that is, a condition which divests a liability on a contract after it has once accrued. Such conditions are very rare." Section 667, 2 Williston on Contracts.

It seems clear from the mere reading of the policy that the parties intended to make defendant's agreement to indemnify plaintiff subject to performance by plaintiff of Condition D. The policy expressly so provides. It stipulates in express terms that defendant's agreements are "subject to the following conditions", and names Condition D as one of the conditions upon which performance by plaintiff is made to depend.

Conditions in contracts may be precedent, subsequent or concurrent. That Condition D was not intended to be a subsequent condition is clear from the definitions above given and that it was not intended to be a concurrent condition is obvious from the fact that the policy does not contemplate performance by plaintiff and defendant concurrently. It requires plaintiff to give immediate notice to defendant of the happening of any accident covered by the policy and, if claim is thereafter made, to "give like notice with full particulars of any claim made on account of any such accident". The purpose of requiring notice to be given is to enable the defendant to resist false or exorbitant claims: *Mandell v. Fidelity & C. Co.*, 170 Mass. 173 (49 N. E. 110, 64 Am. St. Rep. 291). "It was to enable the defendant to investigate the facts and circumstances of the accident while they were fresh in

mind, with the view of settling the loss in case it should be so advised, and, in case of a contest, to be prepared to defend the same as stipulated in the policy.'': *Underwood Veneer Co. v. London Guar. & Acc. Co.*, 100 Wis. 378 (75 N. W. 996).

■ The parties to this contract had a lawful right to make the giving of notice a condition precedent to liability and that they intended to do so is clearly evidenced by the language used in the contract. It was not an unreasonable condition. It contravened no principle of public policy, and was one the performance of which was essential to the protection of the defendant. It is as much a part of the contract as any other provision contained in it. Courts have no power to ignore such provisions nor to eliminate them from the contract after the parties have once entered into it. Such action upon the part of a court would result in the making of a new contract for the parties and would not be an interpretation of the one which they themselves had made.

The question involved in *Dakin v. Queen City Fire Ins. Co.*, supra, was whether the failure of the assured to furnish proof of loss by fire within the time specified in the policy was fatal to plaintiff's right of recovery. That case followed *Stinchcombe v. N. Y. Life Ins. Co.*, 46 Or. 316 (80 P. 213), where it was held that the failure, under a life insurance policy, to furnish proof of the death of the assured within the time specified merely operated to postpone the time of payment and did not defeat the right of recovery for the death. It is true that in the Dakin case the court assigned as one of the reasons for its decision that the policy did not provide for a forfeiture in case the proof was not furnished within the time specified but that was not the reason for the decision. If there had

been such a provision in the policy, the court probably would have decided the case differently. The distinction, however, between those cases and this is perfectly plain. Under the policies there involved, the liability of the insurance company, in one case, accrued the moment the property was destroyed by fire and, in the other, the moment the assured was dead. The requirement, therefore, that the assured should furnish proof of loss was a condition subsequent to liability but it was rightfully held that it was a condition precedent to the right to sue. In section 2586, Page states the rule applicable to cases of that character as follows:

"* * * A provision in an insurance policy, requiring the insured to furnish particulars of loss within a certain time, has been called a condition precedent, since it is a condition precedent to his right to bring an action on the policy, although it is subsequent to the liability of the insurance company."

■ Nor is it true as contended by plaintiff that conditions precedent relate only to the formation of contracts, for as said by Williston, section 666:

"* * * In the law of contracts, conditions may relate to the formation of contracts or to liability under them. It is a source of confusion of thought that the word condition is frequently used without exact recognition of what the supposed condition qualifies. Generally in contracts when reference is made to conditions, what is meant is conditions qualifying liability under a contract or promise, not conditions qualifying the existence of a contract or promise. * * * A condition may qualify the liability of one party to the contract or of both parties. The fact that no liability on either side can arise until the happening of a condition does not, however, make the validity of the contract depend upon its happening. Whether there is a contract depends upon the right of the parties to revoke their promises."

In section 666a, he says:

"*  *  * Liability may arise immediately on the happening of a condition precedent, as in case of a contract to pay if certain work is done; or it may not arise until a later day—as a promise to pay on July 1st, if something had been done or has happened in the previous January."

That the parties intended to make the time of performance by plaintiff of Condition D of the essence of the contract and that this is true although the policy contained no express provision of forfeiture clearly appears from the language used in the contract. In support of this holding we have the great authority of Williston who says, in section 846:

"When it is said that time is of the essence, the proper meaning of the phrase is that the performance by one party at the time specified in the contract or within the period specified in the contract is essential in order to enable him to require performance from the other party. It does not mean that delay will not give rise to a right of action against him. A breach of any promise in a contract, whether of vital importance or not, will do that; nor does the phrase mean merely that time is a material matter, but that it is so material that exact compliance with the terms of the contract in this respect is essential to the right to require counter performance. Even where time is not of the essence, it is generally true that an unreasonable lapse of time may be fatal. Thus time is almost always in varying degrees material but not so often an essential matter. It is obvious that in any contract one party may make his promise expressly conditional on the exact performance of any agreed condition, and therefore performance on a specified day or hour, or before a specified day may be made such a condition. So that the first point to be determined in an inquiry whether time is of the essence in a particular case, is whether the parties have in terms made it so. And it is only when this question has been decided in the negative

that any rule of law other than one of construction is called into play.''

Although the question has not been heretofore passed upon by this court, yet it is well settled by the decisions in other jurisdictions that conditions indorsed upon an indemnity policy, such as Condition D, must be fulfilled before the assured can become entitled to recover under the policy, and that it is not necessary for the policy to contain a provision of forfeiture where, as here, the language of the contract makes the giving of notice a condition precedent to liability on the part of the insurance company.

In *Underwood Veneer Co. v. London Guar. & Acc. Co.*, supra, the court said:

''After careful consideration, we are constrained to hold that the conditions indorsed upon the policy, and quoted above, were conditions precedent. The policy expressly states that it was 'subject to the agreements and conditions indorsed' thereon. Such conditions expressly required the plaintiff, 'upon the occurrence of an accident', to 'give immediate notice in writing of such accident', etc. The reason for requiring such notice is obvious. It was to enable the defendant to investigate the facts and circumstances of the accident while they were fresh in mind, with the view of settling the loss in case it should be so advised, and, in case of a contest, to be prepared to defend the same as stipulated in the policy. Accordingly the plaintiff was thereby expressly precluded from settling any claim or incurring any expense, without the consent of the defendant, except in case of absolute necessity. These things made it important for the defendant to be notified immediately, not only of the occurrence of the accident, but also that a claim for damages had been made by the injured person on account of the accident. The words 'and also', in the conditions quoted, pretty clearly indicate that such notice of 'the occurrence of the accident' was to be

followed by a further or additional notice of any claim made for damages, and each such notice was to be given immediately as therein required. In the two cases relied upon by counsel for the plaintiff, the condition did not contain the word 'also', and in that respect the cases are distinguished from the one at bar. Anoka L. Co. v. Fidelity & C. Co., 63 Minn. 286; Grand Rapids E. L. & P. Co. v. Fidelity & C. Co., 111 Mich. 148. Certainly we cannot hold, under the conditions in this policy, that the notice of the claim for damages, made for the first time nine months after the accident, satisfied the requirement that immediate notice should be given of 'the occurrence of the accident'; nor can we hold that such requirement was not a condition precedent; nor can we hold that such notice of the accident, given for the first time nine months after the occurrence of the accident, was an 'immediate notice,' within the condition quoted, as those words have been repeatedly construed by this court. Kentzler v. Am. Mut. Acc. Asso., 88 Wis. 589. True, there is no forfeiture clause in the contract. Nevertheless the plaintiff, in order to maintain this action, was bound to perform such condition precedent.''

Holding to the same effect see *St. Louis Architectural Iron Co. v. New Amsterdam Cas. Co.,* 40 Fed. (2d) 344, which we deem to be a leading case on this question. Also see the authorities there cited which fully support the doctrine, namely: *National Paper Box Co. v. Ins. Co.,* 170 Mo. App. 361 (156 S. W. 740); *U. S. Fid. & Guar. Co. v. Carmichael Co.,* 195 Mo. App. 93 (190 S. W. 648); *Metropolitan Cas. Ins. Co. v. Johnston,* (C. C. A.) 247 Fed. 65; *Oakland Motor Car Co. v. American Fid. Co.,* 190 Mich. 74 (155 N. W. 729); *Com'l Cas. Ins. Co. v. Fruin-Colnon Contracting Co.,* 32 Fed. (2d) 425; *Travelers' Ins. Co. v. Nax,* (C. C. A.) 142 Fed. 653; *Caleen v. Mass. Protec. Assn.,* 24 Fed. (2d) 694; *London Guar. & Acc. Co. v. Siwy,* 35 Ind. App. 340 (66 N. E. 481); and *Peeler v. U. S. Cas. Co.,*

197 N. C. 286 (148 S. E. 261). See also *Barclay v. London Guar. & Acc. Co.*, 46 Colo. 558 (105 P. 865).

■ Another contention of plaintiff is that, to enable defendant to interpose this defense, it must first show that its rights have been prejudiced by the delay. That contention is not tenable in a case where, as here, the time stipulated for performance is by the terms of the policy itself of the essence of the contract. It being a condition precedent to liability, it must be performed before any liability on the other side can arise as the promise to pay the indemnity is made to depend upon the performance by plaintiff of the condition. Non-performance of the condition prevents a recovery under the policy for the reason that until the condition has been performed plaintiff has failed to perform his contract. Holding to this effect, see *St. Louis Architectural Iron Co. v. New Amsterdam Cas. Co.*, supra; *Whalen v. Western Assur. Co.*, 185 Fed. 490; *Sherwood Ice Co. v. U. S. Cas. Co.*, 40 R. I. 268 (100 Atl. 572); *Phoenix Cotton Oil Co. v. Royal Ind. Co.*, 140 Tenn. 438 (205 S. W. 128); *Jefferson Realty Co. v. Employers' Liability Assur. Corp.* 149 Ky. 741 (149 S. W. 1011); *Underwood Veneer Co. v. London Guar. & Acc. Co.*, supra. In *Jefferson Realty Co. v. Employers' Liability Assur. Co.*, supra, the court said:

"* * * But in our opinion it is wholly immaterial whether or not the appellee company was prejudiced by the unreasonable delay. If it could have been shown that it had been benefited this fact would not affect the question. A reasonable compliance with the conditions of the contract relating to notice is indispensable to fix liability."

■ The contention that defendant, by having taken charge of the proceedings brought by Mrs. Sharp against plaintiff prior to the time when the action was compromised by plaintiff, waived its right to interpose

a defense to this action is wholly untenable for the reason that the parties expressly stipulated that defendant's action in that respect should not be a waiver of its right to deny liability and to refuse to reimburse plaintiff because of plaintiff's breach of the condition in failing to give the required notice.

■ As heretofore stated, more than one year had elapsed after the occurrence of the accident before any notice thereof was given by plaintiff to defendant. Plaintiff seeks to excuse this delay upon the ground that he had no personal knowledge of the happening of the accident until a few days before he notified the defendant. To maintain this contention he asserts that he was not chargeable with the knowledge of the accident that Donaca, his foreman, had acquired at the time of its occurrence and which he had failed to report to plaintiff. He bases this contention upon the case of *Mandell v. Fidelity & C. Co.*, 170 Mass. 173 (49 N. E. 110, 64 Am. St. Rep. 291), where it was held that the plaintiff was not chargeable with knowledge of the accident because the servants had such knowledge and that "neither his driver, stableman nor foreman were his agents for the purpose of giving notice to the (insurance) company". All authorities seem to agree that so far as drivers, stablemen and the like are concerned, they are not such agents as will make their knowledge imputable to the master, but they do not agree on the proposition, if such was the ruling in that case, that the knowledge of an agent whose duty it is to supervise the conduct of subordinate servants and to report to the master the happening of accidents is not imputable to the master. The true rule we think is that stated in *Woolverton v. The Fidelity and Cas. Co.*, 190 N. Y. 41 (82 N. E. 745, 16 L. R. A. (N. S.) 400), where the court said:

"Where, however, a master employs many servants and the duty of acquiring information of accidents as they occur is necessarily committed to servants or agents, if the acquisition of such information is an affirmative duty on his part we cannot see why he is not responsible for the negligence or fault of the servants to whom he intrusts the duty, to the same extent as he would be responsible for their negligence or misconduct in any other obligation to third persons. * * *

"While we thus hold that the plaintiff was chargeable for the delay and neglect of its agents or servants in failing to apprise it of an accident, the occurrence of which they had acquired knowledge or information, this principle must be confined to those agents whose duty it was, either by express regulation of the plaintiff, or by their supervision and control in the natural and proper conduct of business over the subordinate servants by whom the accident had been caused, to transmit such knowledge to their superiors or the company. * * *"

In the case at bar, the evidence shows that plaintiff was actively engaged, as a contractor, in constructing numerous buildings in different cities and transacted his business under the supervision of a general superintendent. That neither plaintiff nor said superintendent was at The Dalles where this particular work was being carried on. Donaca had been sent to The Dalles to take charge of and supervise the work of completing the building and sidewalk, and he had been instructed to report all accidents covered by the policy either to plaintiff or to the general superintendent. In the performance of the work he was not a mere servant but the man in charge who stood in the shoes of and represented the master. For Donaca's conduct while acting within the scope of his employment and for his failure to perform his duties while so acting, plaintiff was responsible to third parties so far as their rights were affected thereby, and as much charge-

able with the knowledge Donaca had of the happening of the accident as he would have been had he been personally present and possessed all the knowledge that Donaca had at the time.

■■ Defendant contends that plaintiff's failure for more than one year to give notice of the accident is fatal to his right to recover in this action. The terms of the policy are that:

"Upon the occurrence of an accident covered by this Policy, the Assured shall give immediate written notice thereof to the Corporation or its duly authorized Agent. The Assured shall give like notice with full particulars of any claim made on account of any such accident."

Strictly construed, the policy requires the insured to give notice immediately after the accident, whether he knew of its occurrence or not. This, however, is so unreasonable a construction it must be rejected. The condition of the policy is to be interpreted as meaning after the insured has become apprised of the accident; provided, however, he exercises reasonable diligence to acquire the information and he is required to so regulate his business that he may be apprised with reasonable celerity of any accident covered by the policy that may occur in its conduct. The word "immediate" in its reference to the notice is not to be taken literally but means with reasonable celerity, with reasonable and proper diligence after a discovery of a ground of liability or after such a discovery should have been made. What is a reasonable time depends upon the circumstances of each particular case and, ordinarily, the question whether required notice has been given within a reasonable time is a question of fact for the jury, having due regard to the nature and circumstances of the case.

"But, where the facts were not in dispute, and the delay was unexcused, comparatively brief periods of delay have been held as a matter of law to be a breach of the condition to give immediate notice. See Smith, etc., Mfg. Co. v. Travelers' Insurance Co., 171 Mass. 357, 50 N. E. 516, where there was a delay of 27 days due to forgetfulness; Foster v. Fidelity & Casualty Co. of New York, 99 Wis. 447, 75 N. W. 69, 40 L. R. A. 833, with a delay of 29 days after knowledge of the facts; Rooney v. Maryland Casualty Co., 184 Mass. 26, 67 N. E. 882, with a delay of 23 days after the accident; Railway Passenger Assurance Co. v. Burwell, 44 Ind. 460, where there was a delay of only 6 days; Myers v. Maryland Casualty Co., 123 Mo. App. 682, 101 S. W. 124, with a delay of 6 weeks; Oakland Motor Car. Co. v. American Fidelity Co. (Mich.), 155 N. W. 729 (1916), with a delay of 3 months; and Travelers' Insurance Co. v. Nax, 142 Fed. 653, 73 C. C. A. 649, there having been a delay of 139 days after the accident." Sherwood Ice Co. v. U. S. Cas. Co., supra.

"As to what is reasonable notice is a question of law, for the court to determine, when the facts are not in dispute. Baker v. German, etc., Ins. Co., 124 Ind. 490, 24 N. E. 1041; Foster v. Fidelity, etc., Co. (Wis.), 75 N. W. 69." London Guarantee & Accident Co. v. Siwy, supra.

██ Since, under this policy, the plaintiff had obligated himself to report immediately all accidents covered by the policy and had failed to make such report for more than one year after the happening of the accident, the burden of proving a reasonable excuse for such failure rested upon the plaintiff and not the defendant. Upon receiving notice of the happening of an accident under a policy such as that involved here, the duty of investigating and determining whether an accident covered by the policy had happened was an active and not a passive duty upon the part of the plaintiff. He was chargeable with all the information he possessed and with all the information that he could

have acquired by the exercise of reasonable diligence upon his part. Upon these and all other principles stated above, the court is in entire accord.

The only testimony tending to show a reasonable excuse for the delay in the giving of notice was that furnished by Donaca and he was a witness for the defendant. Having offered Donaca as a witness in its behalf, the defendant is, of course, bound by his testimony. At the close of the testimony, both sides having moved for a directed verdict, the jury was discharged and the trial court gave judgment for the plaintiff. The findings of the trial judge, therefore, it being an action at law and tried to the court without a jury, have the force and effect of a verdict and, upon this appeal, must be taken as true if there was any substantial evidence to support such findings. The learned trial court found that Donaca's information as to the happening of the accident was so indefinite and uncertain in its nature as to constitute no notice to plaintiff that an accident covered by the policy had happened. It would answer no useful purpose to set forth the testimony given by Donaca. The majority of the court are of the opinion that, under Donaca's testimony, the question of whether it was sufficient to excuse the delay was a question of fact and not of law and, therefore, that this court is bound by the finding of the trial court upon that question.

While conceding that the question of whether a reasonable excuse for the delay had been shown was a question of fact, Mr. Justice CAMPBELL and the writer are of the opinion that the evidence tending to show such excuse was insufficient to warrant the submission of the question to a jury or to a court and, therefore, that the judgment should be reversed. The opinion of the majority, however, is controlling and requires that the judgment be affirmed and it is so ordered.