Argued July 6, affirmed October 27, 1972

NORCREST CHINA COMPANY, *Respondent, v.*
TERRY ET UX, *Appellants.*

502 P2d 242

*Richard Maizels,* Portland, argued the cause for appellants.

*William J. Daw,* Portland, argued the cause and filed a brief for respondent.

BRYSON, J.

This is a suit to foreclose a mortgage given by the defendants to secure performance of an indemnity agreement. Defendants Stanley G. Terry and Gladys R. Terry appeal from the decree in favor of plaintiff. The facts are as follows: The plaintiff purchased the Norcrest China Building from defendants Terry. At the time of sale there were two judgment liens of record against the defendant Stanley G. Terry: *Martin v. Terry,* $13,405.53; and *Simmons v. Terry,* $21,432.02. In connection with the sale, the defendants executed a written indemnity agreement in favor of plaintiff to "protect the above described real property from foreclosure and sale on account of said liens * * *" and to indemnify and save plaintiff harmless from any damage or expense in connection with any of said liens. The indemnity agreement further provided that defendants would execute and deliver to plaintiff a second mortgage on the Dekum Building, Portland, Oregon, and "notwithstanding anything hereinabove provided, NORCREST CHINA COMPANY shall not pay or satisfy any of such liens or institute a foreclosure suit for Terry's breach of this Indemnity

Agreement without first giving Terry 10 days' written notice of its intention to do so * * * in order to give Terry an opportunity to cure any such breach or default." The mortgage on the Dekum Building was executed and delivered. It provided that "[t]his mortgage is intended to secure Mortgagors' performance of that certain Indemnity Agreement * * * dated December 31, 1969, which Indemnity Agreement is hereby incorporated herein * * *." All three instruments, the deed, indemnity agreement, and mortgage, were executed on December 31, 1969. The Norcrest China Building was levied upon by the judgment creditors and the plaintiff paid the full amount of said judgments, totaling $34,837.55, to the Department of Judicial Administration of Multnomah County, Oregon, to satisfy both of said judgments.

The trial court found "that there was a breach of the Indemnity Agreement dated December 31st, 1969 between Norcrest China Company and Defendants Stanley G. Terry and Gladys R. Terry in that they did not protect the real property which is the subject to the Indemnity Agreement from judicial foreclosure of liens thereon, and that the Plaintiff is entitled to foreclose its mortgage * * *" and decreed the foreclosure of the mortgage as to defendants Stanley G. Terry and Gladys R. Terry.

The sole assignment of error is that "[t]he Court erred in entering a Decree foreclosing the mortgage, when the respondent had breached the Indemnity Agreement by failing to give the required notice."

The defendants contend that "Mr. Terry did not have the required written notice of Norcrest China Company's intent to satisfy the judgment in accord-

ance with * * * the Indemnity Agreement," and this was precedent to defendants' liability. Defendants rely on the language in *Hoffman v. Employer's Liability Corp.*, 146 Or 66, 29 P2d 557 (1934):

> "The parties to this contract had a lawful right to make the giving of notice a condition precedent to liability and that they intended to do so is clearly evidenced by the language used in the contract. * * * Courts have no power to ignore such provisions nor to eliminate them from the contract after the parties have once entered into it. Such action upon the part of a court would result in the making of a new contract for the parties and would not be an interpretation of the one which they themselves had made." 146 Or at 72.

■ In *Hoffman* an action was brought to recover on a policy of indemnity insurance issued by the defendant to plaintiff. Defendant claimed no liability because of "plaintiff's nonfulfillment" of the condition which provided "the assured shall give immediate written notice" of the occurrence of an accident. The case determined that "the word 'immediate' * * * is not to be taken literally but means with reasonable celerity * * *." In the case at bar, we agree that notice, as required by the indemnity agreement, is a prerequisite to plaintiff satisfying the judgment liens and bringing a foreclosure suit against the defendants. However, we find that the defendants did receive notice of plaintiff's intention to pay the prior judgment liens and to foreclose the mortgage.

The reason for the giving of the indemnity agreement and the mortgage by defendants to plaintiff was to protect the real property plaintiff purchased against levy and sales by the prior judgment lienholders. Undoubtedly, the sale would not have been consummated

without such an arrangement. The purpose of the required notice was "to give Terry an opportunity to cure any such breach or default."

■ There is an abundance of evidence that the defendants received notice and knowledge of the Judicial Administration sale on the prior judgment liens and of plaintiff's intention to satisfy the judgments and foreclose the mortgage. The Director, Department of Judicial Administration, certified that in the *Martin* case he sent notice to defendants by registered mail on the 6th day of March, 1970, of the sale of the real property on the 6th day of April, 1970, stating the time and place of the sale. In the *Simmons* case, the Director certified he sent notice to defendants by registered mail on the 19th day of March, 1970, of the sale of the real property on the 20th day of April, 1970, stating the time and place of the sale. Mr. Naito, vice president of plaintiff, testified regarding conversations he had with Mr. Terry after receiving notice of the sale from the Department of Judicial Administration:

"Q What was the conversation * * *?

"A * * * Are you [Terry] going to pay off the liens? * * * And Mr. Terry said don't worry, he'll do something. And then I said I just could not have the building sold from under me, which is a building that I acquired a couple of months ago, and that if he would not pay the liens * * * that I would have to. * * * And this type of conversation I think went on for about two weeks * * *. Like at the opening day at the dog races we had this conversation and the — we had a lunch on April third at the Riverside West with Mr. Terry's attorney and Mr. Daw and myself as to how we could protect the property from being sold on the courthouse steps. * * * And Mr. Terry * * * said he would like very much to protect me from the sale,

from the sheriff's sale, but he did not have the wherewithal to do it."

Mr. Naito also testified to other telephone conversations with Mr. Terry regarding the subject prior to the judicial sale of the real property on April 6. In fact, Mr. Naito and Mr. Terry and his son met at the Oregon Bank about 8 a.m. on the morning of the first sale, when Terry was still trying to obtain funds, and proceeded together from there to the courthouse.

Mr. Naito finally realized that Mr. Terry could not obtain the necessary funds to satisfy the judgment liens, and on April 2, 1970, plaintiff gave defendants written notice of the forthcoming sale on April 6, 1970, on the Martin judgment and also confirmed these prior conversations between the two men relating to the two judgment sales. Again on April 15, 1970, the plaintiff gave written notice to defendants and their attorneys of its intention to pay and satisfy the Simmons judgment in the event defendants failed to do so and of its intention to foreclose the mortgage. The sale was on April 27, 1970, and thus there was written notice. Both of these letters of notification were received in evidence. Plaintiff filed this foreclosure suit on August 26, 1970.

In *Brownson v. Lewis and Bunnell,* 233 Or 152, 377 P2d 327 (1962), the plaintiff brought an action contending that the sale of a business was a void transfer of assets under the Bulk Sales Act, ORS 79.010 to 79.040, because he, a creditor, did not receive the required notice of sale of the business assets. As to notice, the court said:

"* * * More properly, the creditor's rights under the statute were abundantly protected without the need for a registered letter or a telegram.

Actual knowledge can, in some circumstances, dispense with formal 'notice'. See In re Scranton & Short, 7 F2d 473 (D Or 1925), where the court applied Oregon law on somewhat weaker facts and found that the purposes of the act had been served without the need for the empty formality of the notice." 233 Or at 157-58.

In the case at bar the plaintiff gave ample notice to defendants of its intention to pay the prior judgment liens if the defendants could not raise the money to satisfy the judgment liens. Also, plaintiff advised the defendants that if it was required to pay the judgment liens in the amount of $34,837.55 to protect its title in the real property it had purchased, it would foreclose the mortgage involved in this litigation. Under the facts of this case, it would have been a vain or useless act for the plaintiff to give defendants further notice. However, it did given written notice prior to the time of sale, and we conclude the defendants received the required notice.

Affirmed.