HORTON et al. v. EMPLOYERS' LIABILITY ASSUR. CORPORATION, Limited.—164 S. W. (2d), 1011.

Eastern Section. June 27, 1942.

Petition for Certiorari denied by Supreme Court, October 10, 1942.

Nathan O. Hale, of Knoxville, for appellant.
Jennings, O'Neil & Jarvis, of Knoxville, for appellee.

PORTRUM, J.  This is a suit turning upon and requiring a construction of a policy of liability insurance issued by the defendant to the insured, Edward Mattews, in which the complainant, Margaret Horton, is a creditor-beneficiary, and as such a character she seeks a recovery for $5,000 because of a judgment obtained by her against Edward Matthews growing out of an automobile accident which was covered by the insurance policy.  She is entitled to this relief under the terms of the policy if the insured, Edward Matthews, has not breached the conditions of the policy and if she be bound by the conditions along with Matthews.  This is the primary determinative issue presented.  The pertinent provisions of the policy are:

"Assistance and Cooperation of the Assured.  The assured shall cooperate with the corporation and, upon the corporation's request, shall attend hearings and trials and shall assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses, and in the conduct of suits, and the corporation shall reimburse the assured for any expenses, other than those of earnings, incurred at the corporation's request. . . .

"No action shall lie against the corporation unless, as a condition precedent thereto, the assured shall have fully complied with all the conditions hereof, nor until the amount of the assured's obligation to pay shall have been finally determined. . . .

"Any person or his legal representative who has secured such judgment or written agreement shall thereafter be entitled to recover under the terms of this policy in the same manner and the same extent as the assured. . . .

"Bankruptcy or insolvency of the assured shall not relieve the corporation of any of its obligations hereunder."

These provisions expressly give a cause of action to the judgment-beneficiary, but this right is restricted by express terms for "no cause of action shall lie against the corporation unless, as a condition precedent thereto, the assured shall have fully complied with the conditions thereof. . . ."  Therefore, if the assured breaches a condition precedent, the right of the creditor-beneficiary is expressly excluded.

There is no contention made that the assured Matthews cooperated with the corporation, after repeated requests, by attending hearings and trials, or giving evidence or even in securing evidence or the attendance of witnesses, notwithstanding he was located and urged to do so by the corporation with full assurance of the payment of his expenses.  Since this is true, it is unnecessary to go into the details of

the facts demonstrating that the corporation did all it could do to secure his assistance and presence at the trial, going to much expense and making careful search to locate him. The fact of Matthews' willful breach of the conditions of his contract is foreclosed by the facts of the case and is not open to argument nor is it worth while to cite the facts since there is nothing in contravention. But it is insisted that Matthews' breach of the conditions precedent, as designated by the contract and accepted by him, is not binding upon the creditor-beneficiary, since she was helpless in the matter and could not protect her rights, or as a matter of law was under no obligation to protect her rights, and also that the aid and assistance of the assured would have availed the corporation nothing. Therefore the corporation is depending upon an empty technicality to defeat the just contractual claims of the complainant.

(a) As for the first insistence, that the condition is not applicable to a creditor-beneficiary: The contract by its express terms, as heretofore quoted, limits the right of the creditor-beneficiary to sue the insurer only in the event of a compliance by the assured of the conditions precedent, and unless the courts construe these express provisions out of the contract as against public policy, then the insurer is entitled to the defense. There was no legal obligation on the part of the corporation nor the assured to enter into a contract for the benefit of the creditor-beneficiary, and the contracting parties were at liberty to enter into such terms and conditions as they saw fit without reference to any future contingent interest of third parties. We cannot see that this liberty of contract transgresses any rights of the public which should be condemned as against public policy. This is not a case where the assured after liability has arisen under the contract in favor of third parties seeks to gain something for himself nor a breach of the conditions for a consideration. This would amount to bad faith on the part of the assured and also the corporation, and the courts will not countenance a defense by the corporation grounded in bad faith; the facts of this case establishes the good faith of the corporation for it attempted by every reasonable means to induce the assured to appear and assist in the defense of the suit filed in the Circuit Court by the complainant against the assured growing out of the accidents. There is a clear inference from the proven facts that the corporation preferred to defend the Circuit suit with the assistance of the assured than to be called upon to defend this suit.

And this policy was not a contract required by law of the assured to protect the general public against his negligent operation of an automobile upon the highway; had the contract been entered into in an attempt to comply with the statute requiring the insurance, then a question of public policy would have arisen when the corporation and the assured attempted to provide a means of escape, after liability had arisen, by a breach of conditions thereafter required.

This state has enacted no statute requiring the operators of private automobiles to obtain liability insurance for the protection of the public, while other states have. Constructions of contracts entered into in these other states throw no light upon the contractual rights of parties in this state who are not laboring under statutory obligations and restrictions. The authorities throughout the Union are in conflict as to the rights of the creditor-beneficiary to enforce the contract, notwithstanding the conditions which have been breached subsequent to the maturity of the liability. But the majority opinion is that when the right of contract is not restricted by statute to the extent of requiring the protection for the public that the parties are at liberty to enter into such contract as they desire, and that the creditor-beneficiary must stand in the place and stead of the assured. To use a commonplace phrase, a creditor-beneficiary must stand in the shoes of the assured and can assert only such rights as the assured could assert. These authorities, pro and con, have been gone into at great length in the briefs, and it would be only time-consuming to attempt a review of them here. The majority rule has been epitomized by a great law book publishing company as follows:

"By the great weight of authority, although there is some conflict on the point, breach of contractual provisions relating to acts or omissions subsequent to the accident is, absent collusion between the insurer and insured, available to the insurer as against the insured person, if, in the circumstances, it would have been available against the insured; in other words, the injured person stands in the shoes of the insured as regards defenses of this character, save in exceptional cases where the effect of insured's failure to comply with conditions of recovery may be avoided by a compliance by the insured person himself." 85 A. L. R., 70.

While this identical question has not directly arisen in this state in the reported decisions, the majority rule as stated above conforms to the construction given to policies of insurance by our courts. Card v. Commercial Casualty Insurance Co., 20 Tenn. App., 132, 95 S. W. (2d), 1281; Johnson v. Life & Casualty Insurance Co., 168 Tenn., 358, 79 S. W. (2d), 39. If in doubt as to the soundness of the majority rule, this court would be disinclined to adopt the minority rule in the absence of an expression supporting it by the Supreme Court.

Where the insurer is not guilty of any act of bad faith and is not attempting to take advantage of a misfortune to the insured, as distinguished from the third party beneficiary, we see no reason why the liberty of contract of the parties should be restricted, and the insurer denied a beneficial provision of its contract. In this case the insurer attempted to avail itself of this beneficial provision of its contract, acting in good faith, and was denied this right by the unexplained and what appears to be willful neglect or indifference on the

part of the insolvent insured. The insistence (a) is found to be without merit.

■■ (b) It is contended that the insured could have rendered no effective aid had he been present, and that the facts as developed and filed in the Circuit Court established liability regardless of what the insured may have testified. That the insurer has lost no legal right. The facts are peculiar and we cannot agree to this conclusion. The complainant, her fiance, later her husband, and her sister, the companion of the insured Matthews, were riding in Matthews' car on Sunday morning about three o'clock, after attending a midnight picture show, on a principal thoroughfare in the city of Knoxville, traveling east, at a rate of about 45 or 50 miles per hour. A negro driving a car approached them from the west upon this thoroughfare, and he suddenly turned his car directly in front of the Matthews' car in an attempt to go into a side street, when the cars ran together and caused the injury. A short time thereafter the defendant's insurance adjuster called upon the occupants of Matthews' car, and each made a written statement stating that the Negro had turned suddenly in front of them, causing the accident, when he ran away, and that Matthews was without fault. No claim was made against Matthews for several months thereafter, when a suit was brought in the Circuit Court based upon a different version. These occupants of the car upon the trial swore to a different version, and stated that Matthews was driving too fast and they had protested against the high speed before reaching the point of the accident. In the written statement the complainant stated: ''He wasn't driving fast and wasn't driving slow, he was driving on his side of the street at a moderate or normal rate of speed.'' All the other occupants in the car confirm this. These occupants as witnesses repudiated their statements and gave a different version. Matthews was the only eye witness available to be used in the defense, and he had given a clear statement of what occurred at the same time with the others, which demonstrates that he was a very material witness in behalf of himself and the corporation. The insurance company, had it elected to defend, could not have used his statement nor could it induce him to appear, and confronted with this condition it elected not to enter the appearance of the defendant in the Circuit Court case, but to abandon the defense and let the case go by default since it had no available defense in the absence of the defendant. When the insured does not cooperate as provided by the terms of the policy, then the burden to show that his cooperation would have availed nothing is upon the complainant and not the insurance company, and in view of the facts stated she has not carried the burden.

■ It is further insisted that the company could have procured the insured's cooperation by taking his deposition in Miami, Florida, where he was temporarily located as a chef on a private yacht, antici-

pating a world cruise. Since it was evident to the company that the complainant and her witnesses were going to repudiate their written statements, it could not anticipate what testimony they would give, and were in no position to contradict it by taking the deposition of the insured before the date of trial. After stating that Matthews was driving carefully, the company could not anticipate that each was going upon the stand and declare that he was driving recklessly and that they had protested before the point of contact. The company was entitled to the presence of the defendant at the trial to meet any surprise testimony in controvention of the statements given by the witnesses. And for this purpose the company contracted for the defendant's presence at the trial. It is apparent that if he were willing to cooperate his absence was more beneficial to the plaintiff than to the insurance company. The plaintiff took advantage of his non-cooperation, for she did not attempt to take his deposition and lay her case of negligence before him in order that he could give his version; had she done so, it would not have been necessary under our rule for her to have read his deposition, but she could have made it available to the insurance company. She knew he was insured, and she could have anticipated this defense when he did not appear and defend.

To deny the right of the insurance company to the cooperation and testimony of the insured only makes the procurement of insurance more difficult and more expensive, making it easier to establish collusive issues against the company. When the company demands and seeks the cooperation and testimony of the insured in good faith, then it should be and is the policy of the law to require this of the insured under the terms of this contract.

There was no waiver on the part of the company by conduct or activity prior to its knowledge that the insured did not intend to cooperate. It did interview counsel for the complainant through its adjuster, and attempt to compromise at a nuisance value, but it did this before Matthews had left town, and when it thought it would have the full cooperation of Matthews in the defense suit. But after learning that Matthews declined to assist or appear and testify, it declined to enter Matthews' appearance in the suit and the plaintiff elected to take a judgment by default and went to trial ex parte without attempting to secure Matthews' presence in person or by deposition, nor has the complainant ever attempted to explain why her social date did not cooperate with the company. He was upon good terms with her after the institution of her suit. The reasonable inference is that she did not seek nor desire his cooperation with the defendant company. We find no conduct on the part of the company justifying an estoppel defeating its right to the presence and cooperation of the insured.

Exceptions were taken to certain depositions taken and filed in this case by the defendant company in the city of New York and

Miami, Florida, on the ground that the complainant is a pauper and was unable to have counsel at these two distant points, while the company was able to have brought the witnesses to Knoxville for the trial when she could have cross examined them without expense. She could have procured an order from the Chancellor granting her the right to file cross interrogatories which she could have sent by mail and have cross examined the witnesses without great expense. The company followed the statute in taking these depositions, gave the required notice, which is a recognized method of procuring testimony in equity cases, and the Chancellor under the law would not have been justified in sustaining the exceptions for the reasons assigned.

We find no error in the decree of the lower court and it is affirmed.

Ailor and McAmis, JJ., concur.