Argued September 11; affirmed October 17, petition for
rehearing denied November 26, 1963

# JOHNSON *v.* DOUGHTY and FARMERS INSURANCE EXCHANGE

385 P. 2d 760

*Pat Dooley,* Portland, argued the cause for appellant. With him on the briefs was Leo Levenson, Portland.

*Ben T. Gray,* Portland, argued the cause for respondents. With him on the brief was Richard F. Porter, Portland.

Before McAllister, Chief Justice, and O'Connell, Goodwin, Denecke and Lusk, Justices.

GOODWIN, J.

Carl Johnson and Bessie Johnson each recovered a default judgment against one Lawrence Doughty for damages arising out of an automobile collision. Thereafter, the Johnsons brought writs of garnishment against Farmers Insurance Exchange. That garnishee now appeals from judgments entered in favor of each plaintiff. The cases have been consolidated for this appeal.

The collision occurred while Doughty was driving an automobile he had borrowed from one Smith. The garnishee at all material times was the carrier of insurance for Smith's automobile. Smith and Doughty resided at the same address in Bingen, Washington. Doughty borrowed the automobile to go to The Dalles, Oregon. He went to The Dalles and the collision occurred on his return to Bingen. While there is a dispute as to the fidelity with which Doughty observed the scope of his bailment, there is evidence from which the trier of fact could have found that Doughty was,

at all material times and places, a permissive user of the Smith automobile within the meaning of Smith's policy① of liability insurance. See *Wallin v. Knudtson,* 46 Wash2d 80, 278 P2d 344 (1955). The legal conclusion that Doughty was, accordingly, an "insured" under Smith's policy rested upon findings of fact which the trial court made in favor of the plaintiffs. There was adequate evidence to support those findings, and there is no reason to disturb them on appeal.

■ The focal issue here is whether the insurer-garnishee was relieved of its duty to pay the damages assessed against Doughty because of an alleged failure on the part of Doughty to cooperate with the insurer as required by the "insuring agreements" contained in the contract between Smith and the insurer. A failure by the insured to cooperate with the insurer is a breach of the contract, and, if prejudice to the insurer is proven, amounts to a defense that will relieve the insurer of its duties under the policy. See *Allegretto v. Or. Auto Ins. Co.,* 140 Or 538, 13 P2d 647 (1932). (We need not in this case re-examine the implication in the *Allegretto* case that prejudice need not be shown.)

On the issue of noncooperation, these additional facts are relevant:

After the collision, Doughty failed to stop. He

---

① "* * * * *

"(b) with respect to the insurance afforded by this policy under Coverages A and B, the unqualified word 'insured' includes (1) the named insured and, while residents of his household, his relatives, (2) with respect to the described automobile or a substitute automobile, any other person or organization legally responsible for its use, provided the actual use of the automobile is by the named insured or with his permission * * *."

was pursued and forced to the curb. He paused long enough to display evidence of intoxication, then drove off. He was never seen again by any of the persons interested in this litigation. The automobile was later found where Doughty had abandoned it. The automobile was traced to Smith. The collision was promptly reported by the Johnsons to Smith. Smith then reported the episode to his insurer. The collision was also promptly reported to the insurer by the Johnsons. The insurer thus had knowledge of the incident, even though it had not received a report from Doughty.

Some effort was made by police officers in Bingen, Washington, to learn the whereabouts of Doughty. They learned only enough to "believe" that he was "in California." Since there was no charge of a felony against Doughty, the police declined to pursue the matter further.

While the record is not clear on the point, there is evidence that one or more of the insurer-garnishee's adjusters knew that Doughty might be located at his mother's home in Azusa, California. The only evidence concerning Doughty's whereabouts during the times in question after the collision came from the adjuster and was admittedly based upon hearsay information from Doughty's relatives. The adjuster admitted that he knew the mother's name and address, but that he had made no effort to pursue the matter of Doughty's whereabouts.

The insurer sent Doughty a letter notifying him, not that he had a duty to cooperate, but only that the insurer was denying coverage. The letter was addressed to "Larry Daughty [sic], Bingen, Washington." Doughty had last resided there, but everyone

agreed he could not be found in Bingen after the collision. No letter appears to have been sent to Doughty at the California address the adjuster had discovered. There is no evidence that Doughty ever received a letter from the insurer. It is equally clear that Doughty did not correspond with the insurer, nor did he participate in any manner in the defense of the actions brought by the Johnsons.

■ The insurer, as noted, had initially refused to defend either action, apparently relying upon Doughty's failure to give notice of the collision as a breach of the policy which relieved the insurer of any duty to defend. Since the insurer had notice of the collision from other sources, its right to notice was not prejudiced by Doughty's failure to give notice. See *Campbell v. Allstate Insurance Company*, 32 Cal Rptr 827, 384 P2d 155 (1963), and cases collected in the Annotation, 72 ALR 1375, 1425 (1931). Unless otherwise excused from performance of its contract, the insurer was under a duty to defend the actions against Doughty in the cases now before us.

The trial court found that the insurer, in the exercise of due diligence, could have located Doughty, and could have solicited his cooperation. For the duty to exercise reasonable diligence, see *Wallace v. Universal Insurance Company*, 18 App Div2d 121, 238 NYS2d 379 (1963), and cases noted in Annotation, 60 ALR2d 1146, 1163, 1166 (1958). The trial court concluded as a matter of law that Doughty's failure voluntarily to place himself at the disposal of the insurer would not relieve the insurer of its duty to give Doughty reasonable notice and make a reasonable effort to secure his cooperation.

We agree with the trial court. The evidence proved

that the insurer did not make a reasonable effort to locate Doughty. The only letter sent to Doughty was directed to an address known to be incorrect at a time when the insurer had reason to know of a better address. The evidence creates a strong inference that the insurer did not want to locate Doughty under the circumstances of the case. Under such circumstances, the mere fact that Doughty disappeared is insufficient to show lack of cooperation. See *Pennsylvania Threshermen & F. M. Cas. Ins. Co. v. Owens,* 238 F2d 549 (4th Cir 1956); but see, where the insured disappears after reasonable efforts have been made to obtain his cooperation, *Potomac Insurance Company v. Stanley,* 281 F2d 775 (7th Cir 1960).

The contract between the insurer and Smith created liability insurance not only in favor of Smith, the named insured, but also in favor of Doughty, who came within the extended protection of the so-called "omnibus" coverage clause. See, e.g., cases collected in the Annotation, 126 ALR 544 (1944). Under such a contract, Doughty was a donee-beneficiary under the definition found in Restatement, 1 Contracts, § 133. He had the right to be notified that the contract existed and that he had certain duties under it before his rights could be terminated by reason of any failure on his part to communicate with the insurer.

Whether or not Doughty was a desirable insurance risk makes no difference. The evidence reveals that no reasonable effort was made by the insurer to give him an opportunity to demonstrate his willingness or lack of willingness to cooperate. The defense of non-cooperation is one that must be proven by the insurer. The defense is not an escape clause that can be invoked by its mere assertion whenever an insurer finds

itself faced with a difficult case to defend. To permit the insurer to relieve itself of its contractual duties in the case at bar would encourage such insurers to avoid locating their less desirable insureds whenever it might appear to be advantageous to do so.

Affirmed.