Argued March 7, reargued September 9, affirmed December 18,
1963, argued on rehearing April 30, former opinion
adhered to as modified July 8, petition for
rehearing denied September 9, 1964

# STATE FARM MUTUAL AUTOMOBILE INSUR-
ANCE COMPANY ET AL *v.* FARMERS
INSURANCE EXCHANGE

387 P. 2d 825
393 P. 2d 768

*Myron L. Enfield* and *Geo. A. Rhoten,* Salem, argued the cause for appellant. With them on the briefs were Rhoten, Rhoten & Speerstra, Salem.

*Al J. Laue,* Salem, argued the cause for respondents. With him on the brief were Williams & Skopil, Salem.

Before McALLISTER, Chief Justice, and ROSSMAN, PERRY, SLOAN, O'CONNELL, GOODWIN and DENECKE, Justices.

DENECKE, J.

The question for decision is whether or not the defendant insurer used due diligence to secure the co-operation of its insured to assist in the defense of an action for damages.

The defendant, hereinafter referred to as Farmers, wrote an automobile liability policy for one Ratzlaff. During the policy period Ratzlaff had a collision with one of the plaintiffs, Sjolund. Sjolund carried collision insurance with the plaintiff insurance company, here-inafter called State Farm. After State Farm paid Sjolund for the damages to his automobile, less the deductible, Sjolund and State Farm brought an action against Ratzlaff for the damage done to Sjolund's vehicle. This action was tried and resulted in a judg-ment for the plaintiffs.

Such judgment was not satisfied and plaintiffs brought this suit against Farmers, as the liability in-surance carrier of Ratzlaff. The suit was brought pur-suant to ORS 736.320, which authorizes a suit against an insurer if a judgment against an assured is not satisfied within 30 days of the rendering of the judg-ment. Farmers alleged as an affirmative defense that it had no obligation under its policy because Ratzlaff had breached the terms of the policy by failure to co-operate in the defense of the damage action in that he failed to appear at the trial. The trial court entered a decree for the plaintiffs.

Failure to attend trial is usually deemed non-cooperation on the insured's part. See cases collected at 60 ALR2d 1146 (1958). The usual question, and the question here, is whether the insurer used due diligence to secure the attendance of the insured. In *Johnson v. Doughty*, 77 Or Adv Sh 253, 385 P2d 760 (1963), we stated our accord with the general rule that an insurer

must use due diligence to secure the cooperation of its insured. We held in that case that the insurer had not used due diligence to secure its insured's cooperation. In the *Johnson* case there had been no communication between the insurer and the insured about any matter at any time. It was found that the only letter sent by the insurer to the insured had been sent to an address known to be incorrect.

The facts in this case are not as one-sided. On September 11, 1959, a copy of the answer in the damage action was sent to Ratzlaff at his address in Eureka, California, where he had lived for sometime. An acknowledgment was requested, but none was received. The trial of State Farm and Sjolund against Ratzlaff was set for February 2, 1960, at Dallas, Oregon. On November 30, 1959, the attorneys appearing for Ratzlaff wrote Ratzlaff notifying him of the trial date and requesting him to acknowledge receipt of this notice. The letter was addressed to the same address in Eureka. No acknowledgment was received. On January 14, 1960, Farmers sent a letter to Ratzlaff by certified mail again notifying him of the trial date, stating the necessity for him to be present at the trial and offering to reimburse him for any expenses incurred in attending the trial, including loss of wages. An acknowledgment was again requested, but again none was received. Ratzlaff did not appear at the trial or notify Farmers that he was not going to appear. Ratzlaff's attorneys moved for a continuance upon the ground that Ratzlaff was not present. Their motion was denied, and the attorneys continued to represent Ratzlaff at the trial.

The cooperation clause in the policy issued to Ratzlaff was as follows:

"The insured shall cooperate with the Exchange

and, upon the Exchange's request, shall attend hearings and trials and shall assist in affecting settlement, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of suit."

■ If this were an ordinary commercial bilateral contract between two parties for whom a continuous relationship during the term of their agreement was mutually advantageous, Ratzlaff probably would be held to have breached his contractual duty. If a party to an ordinary contract is notified by mail that, under the terms of the contract, he is now required to perform an obligation assumed by him in the contract, such notification is usually sufficient. A failure to perform after such notification would amount to a breach of the contract unless some legal excuse for nonperformance is shown. The party whose performance was not forthcoming would have the burden of explaining his default. The presumption would arise that a letter duly directed and mailed to the addressee at his last known address was received by him. ORS 41.360(24).

Notification by mail to the insured in an automobile liability insurance contract that he must now perform a duty he undertook by contract may not be sufficient.

The motivation of an insurer and an insured may be very different from the motivation of the parties to the usual contract. In the usual contract it is to the promisee's benefit and advantage to have the promisor perform his contractual duties. If there is any indication that the promisor is not going to perform, the promisee will exert great effort to secure performance. If performance is not secured, the benefit the promisee hoped to gain from entering into the contract is lost. There is no need to impose a legal duty on the promisee

to use diligence to secure the promisor's performance; the economics of the bargain provide ample incentive. The only legal duty that must be inferred, if it is not expressed in the contract, is the duty to notify the promisor that the contractual prerequisites upon which his performance was conditioned have now occurred.

In an insurance contract the benefit to the promisee, the insurer, may be gained in exactly the opposite manner from that existent in the usual contract, i.e., the insurer benefits if the promisor *fails* to perform. If the promisor, the insured, fails to perform his duty to cooperate, the promisee gains the ultimate benefit; it does not have to pay a loss. There is no economic incentive for the insurer to expend any effort to secure the insured's performance.

The promisor-insured's motivation may also be very different from that of the usual contractual promisor. The usual promisor hopes to gain a benefit or avoid a detriment by performing. Again, the economics of the bargain usually provide enough incentive to guarantee performance and, if this is insufficient, the financial consequences of a breach of contract supply an additional goad.

This motivation is usually wholly lacking when difficulty is encountered in securing the cooperation of an insured. Insureds, when uncooperative, usually become so because they cannot see how their cooperation would benefit either themselves or their insurance company. If the insured was a witness to the accident and believes that on trial he will be found to be at fault, he may see no reason why he should be at the trial. If he was not a witness to the accident, he likewise may see no reason why he should be at the trial. Regardless of his attitude about the above matters, if the

insured is judgment proof, he may see no pecuniary benefit accruing to him from attending the trial. The type of person most likely to be indifferent to his duties under the insurance contract is frequently the type of person least likely to be concerned about a judgment being obtained against him.

This situation presents the temptation and the opportunity to the insurer to create a defense to what otherwise would be an indefensible claim, particularly when the insured is believed to reside some distance away from the place of trial. The disinterested attitude of the insured becomes known to the claims man handling the claim. (This was obvious here as the insured on two occasions failed to notify the insurer of the service of summons on him in this action until long after service.) The claims man forms the opinion that this particular defendant may not respond to impersonal, routine communications such as by letter. The insured may not respond to a personal urging by a representative of the insurer either, but if the law does not require some degree of diligence, the insurer has no incentive to do more than "go through the motions." If the insurer sends a letter to the insured notifying him of the trial date, and the insured does not appear, what initially may have appeared to be a case involving a certain loss to the insurer in some amount conveniently turns into a case with an air-tight defense.

We are not inferring that the insurance industry makes this a trade practice. The fact that this appeal and *Johnson v. Doughty,* supra, are the first two cases in this court involving this problem is proof it does not. However, the temptation and opportunity inherent in this situation is a factor to be considered in determining the scope of the duty to use due diligence.

If a situation of the kind described only involved the loss by an insured of the indemnity he purchased under his insurance contract, the possibility envisioned above would not concern us. As noted, the typical uncooperative insured is judgment proof. Indemnity is only of academic concern in such cases. However, while such an insured is nominally the important party, he has no real interest in the outcome; the injured party has the real interest. The injured party is at law only a subrogee of the insured, but in the usual noncooperation case the injured party has the substantial interest, and the interest of the insured is only superficial. The appearance of the insured may be all-important to the defense of the action, but the losing, winning or paying of a judgment ordinarily does not concern the noncooperating insured.

■■ This court and the Oregon Legislature have recognized this interest of an injured party. In *In re Vilas' Estate,* 166 Or 115, 135, 110 P2d 940 (1941), this court stated:

"The public policy of this state is to protect as far as possible those injured through the carelessness or negligence of motor vehicle operators who make use of its highways. * * *"

The Oregon Legislature by the Financial Responsibility Act, ORS ch 486, largely abolished any insurance policy defenses, including the defense of noncooperation, when an action is brought by an injured party against an insurer. That act, however, only applies to policies issued as proof of financial responsibility. ORS 486.550. Again, in another context, the legislature has required that all automobile liability policies contain a provision insuring policyholders against loss by reason of injuries inflicted by an uninsured motorist.

ORS 736.317. These legislative declarations reflect a governmental policy in favor of protecting the innocent victims of vehicular accidents even though the tort-feasor may have been totally indifferent to the rights of others.

■ For these reasons we conclude that standards governing ordinary bilateral contracts do not necessarily govern an insurer's obligation to use due diligence to secure the cooperation of its insured. We are not holding, however, that an insurer, issuing a policy not required as proof of financial responsibility, can never assert successfully the defense of noncooperation. We are holding that an insurer must make a substantial showing of diligence before it can successfully rely on the defense of noncooperation.

Before it can be determined whether Farmers used due diligence here, it must first be determined whether this is a suit in equity or an action at law. In the former, the case is tried de novo.

■■ We hold this is an equitable proceeding in the nature of a creditor's bill. The prayer of the complaint was for an order requiring Farmers to satisfy plaintiff's judgment against Ratzlaff. The proceeding was an attempt by a judgment creditor to reach an asset of the judgment debtor. "* * * where a creditor seeks to satisfy his debt out of some equitable estate of the defendant [judgment debtor] in the suit which is not liable to levy and sale under an execution at law," it is a type of creditor's suit. *Security S. & T. Co. v. Portland F. M. Co.,* 124 Or 276, 303, 261 P 432 (1928). In the case of *In re Vilas' Estate,* supra (166 Or 115), the contractual liability of an insurance carrier to the deceased insured was held to be an asset warranting the appointment of an administrator in the county in

which the insured did business. Such an asset is equitable, rather than legal, because it is not liable to levy and sale by an execution at law. Note, *Foundation for a Creditor's Bill in Oregon,* 36 Or L Rev 338 (1957).

■ The fact that it can be reached by garnishment, an action at law, does not necessarily deprive equity of jurisdiction. *Sabin v. Anderson,* 31 Or 487, 494, 49 P 870 (1897); *Matlock v. Babb,* 31 Or 516, 49 P 873 (1897). The rule of these decisions is that pre-existing equitable jurisdiction is not taken away by legislative creation of a remedy at law, such as garnishment, unless the legislature specifically so provides. Plaintiff here is proceeding under ORS 736.320, which provides:

> "* * * if such judgment [against an assured] is not satisfied within 30 days after it is rendered, then such person or his legal representatives may proceed against the company to recover the amount of such judgment, either at law *or in equity,* * * *." (Emphasis added.)

This is a clear statement that an injured party may use any equitable remedies that are otherwise applicable, such as a creditor's suit. See Note, 9 Or L Rev 58–59 (1929), for decisions permitting the use of creditors' suits against liability insurance carriers. See decisions noted in 8 Appleman, Insurance Law and Practice, 247, § 4838.

■ Trying this as an appeal de novo, we find that the defendant did not use due diligence in attempting to secure the attendance of Ratzlaff at the trial of the damage action.

It is difficult to state any specific principles concerning what does or what does not constitute an exercise of due diligence. All we shall attempt here

is to state the evidence, or lack of evidence, that caused us to reach this decision.

All the circumstances here warned that Ratzlaff's cooperation was not going to be a matter of course. The accident was in May, 1953, more than six years before the trial date. Automobile collisions with no personal injuries dim in importance as they grow ancient. In June, 1955, attempted service in *State Farm v. Ratzlaff* was made on Ratzlaff in Eureka. He did not send the summons and complaint to Farmers until its representative contacted him over two years later in September, 1957. The default judgment entered by reason of this service was set aside, and he was served again in March, 1959. The papers then served were not turned over to Farmers until more than 90 days after service. Despite a request he failed to acknowledge letters sent to him by Farmers and by Ratzlaff's attorneys, engaged by Farmers, in September and November, 1959, and January, 1960. It should not have been surprising when he did not appear at the trial in response to the January letter requesting him to appear.

On July 30, 1959, Farmers had Ratzlaff execute a Reservation of Rights Agreement. The agreement recited that Farmers "considers that it would not be responsible for any judgment rendered," but Farmers agreed to defend him if he would cooperate. This agreement is significant in two respects. It appears that a representative of Farmers personally contacted the insured at his address in Eureka and supervised the execution of the agreement. The inference is that when the insurer desired the insured's cooperation for the insurer's benefit, acquiescence in the insurer's denial of protection, personal contact could be made, and such contact was effective in obtaining the in-

sured's cooperation. When the insured's cooperation was not to the insurer's benefit, it relied upon letters, not personal contact. It should not be assumed that in every case personal contact is essential to an exercise of due diligence. However, in this case, under all the circumstances, the absence of an attempt to have a representative of the insurer personally attempt to secure the insured's presence at trial is damaging to defendant's defense.

Farmers denied any liability to Ratzlaff by the Reservation of Rights Agreement. Under some circumstances a denial of liability by the insurer terminates any duty of the insured to cooperate. See cases collected at 70 ALR2d 1197, 1201 (1960), and 49 ALR2d 694, 759 (1956). Such is not the case here, but denial of liability would certainly dull the insured's incentive to cooperate, and, therefore, more diligence would be necessary to attempt to secure his cooperation.

Ratzlaff's version of the collision is not in evidence. We may assume Farmers obtained his statement. The answer filed for Ratzlaff denies his negligence and alleges contributory negligence upon Sjolund's part. However, the answer was not verified by Ratzlaff. The absence of Ratzlaff's statement leaves us in doubt as to whether his testimony at the trial would have helped or hindered his defense. Its absence creates the suspicion that it was unfavorable to Ratzlaff. The importance of this is that if an insured's version of the accident is unfavorable to him, and, therefore, to his insurer, we would more closely scrutinize the insurer's efforts to secure the presence of the insured.

The defendant alleged the affirmative defense of noncooperation by Ratzlaff, its insured. To maintain successfully such a defense it must bear the burden of

proving that it used due diligence in securing such cooperation. As the trier of fact upon an appeal de novo we find it did not prove that it used due diligence.

The defendant also contended that the trial court erred in not considering certain evidence. Inasmuch as we have tried the case de novo and reached the same decision that the trial court did, it is not necessary to consider this.

Affirmed.

PERRY, J., dissenting.

In my opinion the majority appear to place some confidence in the result reached by treating the case as one in equity. Whether the case is in equity or at law, the legal principles are the same where the facts are not in dispute and there are no facts from which divergent conclusions can reasonably be drawn. The facts being admitted, the result reached depends upon the principles of law applied.

The majority state that the question in the case is "whether or not the defendant insurer used due diligence to secure" the attendance of the insured at the trial. They then argue that for the insurer to show due diligence it must show that it contacted the insured personally. This is certainly an innovation in the law. The insurer has already shown that by letter it had advised the insured of the necessity of his presence at a trial at a particular time and had offered to pay all of the insured's expenses, including loss of wages. This letter certainly meets all of the requirements of due diligence in giving notice and providing material means and inducement for the insured's attendance at the trial. The majority, however, seem to include in the words "due diligence" the thought that the insurer must personally contact the insured and convince him

by oral argument that he must cooperate. No court has ever gone this far.

Due diligence under any circumstance simply means reasonable and ordinary care. See Words and Phrases, Permanent Edition 13, pages 4, 76 and 481. Due diligence certainly cannot apply to an act that can have no legal efficacy whatsoever.

The majority refer to cases from 60 ALR2d 1146, and *Johnson v. Doughty*, 236 Or 78, 385 P2d 760, with reference to due diligence. Basic in each of these cases is the requirement to use due and reasonable care; to give notice, and where necessary, to provide the material means which will permit an insured to cooperate with the insurer. If the majority wish to reach a result it would be more in harmony with the holdings of other courts to require an insurer to provide a motor vehicle and chauffeur to drive the insured to a trial. This would at least give material assistance to the insured.

To base a decision upon the doing of an act which cannot in any wise be relied upon to produce a result is quite strange. If this view of the majority is to be followed, then there is no reason why in addition to requiring a personal call to show due diligence, the court should not require that a telephone call be made one week before the trial, and a telegram sent a day before trial. The majority also view with alarm "the temptation and the opportunity to the insurer to create a defense to what otherwise would be an indefensible claim, * * *." There is no evidence of that situation in this case. Neither is there any evidence that the injured party induced the defendant not to appear for the purpose of enabling the plaintiff to recover his judgment and later collect that judgment against the

insurer. This is a reasonable possibility, and has happened. See, *Bassi v. Bassi*, 165 Minn 100, 205 NW 947; *Rohlf v. Great American Mut. Indem. Co.*, 27 Ohio App 208, 161 NE 232; *Tomlinson v. Goldberg*, 121 Pa Super 125, 182 A 765; *Horton v. Employers' Liability Assur. Corp.*, 25 Tenn App 593, 164 SW2d 1011, cert den 179 Tenn 220, 164 SW2d 1016; *Eakle v. Hayes*, 185 Wash 520, 55 P2d 1072.

I think this court ought not to speculate that there may be fraud or collusion in a case. The presumption is that people are generally honest. If fraud or collusion are to be relied upon, either as sword or a shield, there should be some evidence to that effect.

In my opinion, the principal question presented is whether the evidence is sufficient to establish a breach of the cooperation clause of the insurance contract by Ratzlaff.

This court has held that where cooperation with the insurer by the insured is a condition of the policy, failure to cooperate voids the duty of an insurer to pay an insured's loss; this by reason of the fact that the rights of a third party who would claim against an insurer are subrogated to the rights of the insured to demand protection. Therefore, if the insured cannot recover under his contract to be indemnified because of his breach, neither may the injured third person. *Allegretto v. Or. Auto Ins. Co.*, 140 Or 538, 13 P2d 647.

The sole claim by defendant of lack of cooperation under the policy is the failure of Ratzlaff to appear at the time of trial.

Some courts have held that the cooperation clause in a liability policy is to be strictly construed and a showing made that the insured was requested to attend and provisions made for insured's expenses where

required, then insured's failure to attend is sufficient to sustain lack of cooperation, as failure to appear is prejudicial per se. *Glens Falls Indemnity Co. v. Keliher,* 88 NH 253, 187 A 473; *Shalita v. American Motorists Ins. Co.,* 266 App Div 131, 41 NYS2d 507, rehearing and appeal denied, 266 App Div 885, 44 NYS2d 101; *Potomac Insurance Co., v. Stanley,* 281 F2d 775 (CA 7th); Anno: 60 ALR2d Liability Insurance-Cooperation, 1148.

Other courts have held that the failure of the insured to appear at the trial when requested to do so is not prejudicial per se, but the insurer must present facts from which the conclusion may be drawn that insurer was in fact prejudiced. *Roberts v. Commercial Standard Ins. Co.,* 138 F Supp 363; *Curran v. Connecticut Indem. Co.,* 127 Conn 692, 20 A2d 87; *Schneider v. Autoist Mut. Ins. Co.,* 346 Ill 137, 178 NE 466; *Eakle v. Hayes,* 185 Wash 520, 55 P2d 1072; Anno: 60 ALR2d, Liability Insurance-Cooperation, 1148, supra. In my opinion this latter rule is more just.

A showing of prejudice does not require proof that the result of the trial would have been different, but only that the insurance company may be handicapped in the presentation of its insured's defense. *Allegretto v. Or. Auto Ins. Co.,* supra.

The record in this case discloses that Ratzlaff was operating his motor vehicle at the time of the collision with the motor vehicle of the plaintiff Sjolund. It therefore appears the insurance company could not properly present all of the facts in issue without the testimony of the eyewitness, defendant Ratzlaff. In my opinion prejudice was established by defendant if the evidence is sufficient to establish Ratzlaff was duly notified by his insurer.

Since the plaintiffs stand in the shoes of Ratzlaff, and may recover from defendant insurer only if Ratzlaff could recover from the defendant, it is necessary to consider the rights of Ratzlaff under the evidence in the record.

Ratzlaff was served in the original action at Eureka, California, and advised his insurer his address in that city was 732 5th Street. He also agreed in writing, apart from the policy, to "fully cooperate in his defense of said action." It is admitted by the parties that Ratzlaff was asked, and he expressly agreed, to notify his insurer of any change in address. There is no evidence in the record of Ratzlaff having changed his address, therefore, the presumption obtains that the letters duly directed and mailed to him at Eureka, California were received by him. ORS 41.360; *Alpha Phi of Sigma Kappa v. Kinkaid,* 180 Or 568, 178 P2d 156; *First National Bank v. Connolly,* 172 Or 434, 138 P2d 613, 143 P2d 243; *Coffey v. Northwestern Hospital Assn.,* 96 Or 100, 183 P 762, 189 P 407; *Williams v. Culver,* 39 Or 337, 64 P 763. In the absence of any evidence to the contrary, the presumption must prevail.

A number of jurisdictions excuse the failure of an insured to appear at a trial when good cause is shown. See Annotation, 60 ALR2d 1171. No attempt was made by either party to explain Ratzlaff's absence.

Since the law presumes Ratzlaff received due notice, then, in the absence of evidence to the contrary, it must be assumed his failure to appear was voluntary and nonexcusable.

I would reverse the judgment of the trial court, with instructions to enter judgment for the defendant.

Mr. Chief Justice McAllister and Mr. Justice Rossman join in this dissent.

## ON REHEARING

*George L. Hibbard,* Oregon City, argued the cause for appellant. On the briefs were George A. Rhoten, Myron L. Enfield and Rhoten, Rhoten & Speerstra, Salem.

*Alfred J. Laue,* Salem, argued the cause for respondents. With him on the brief were Williams & Skopil, Salem.

James H. Clarke, Portland, filed a brief acimus curiae, urging reversal.

Burl L. Green, Portland, filed a brief amicus curiae, urging affirmance.

Before McALLISTER, Chief Justice, and ROSSMAN, PERRY, SLOAN, O'CONNELL, GOODWIN and DENECKE, Justices.

O'CONNELL, J.

We granted defendant's petition for rehearing, and granted a motion by Mr. James H. Clarke to file a brief as amicus curiae. We also called upon Mr. Burl L. Green to prepare a brief as amicus curiae on the following question propounded by the court.

> "What is the nature and extent of an insurer's duty to exercise due diligence to secure the cooperation of its insured to assist in the defense of an action for damages?"

The excellent briefs submitted by amici curiae have been helpful to the court.

 After a careful re-examination of the question presented on this appeal we still are of the opinion that defendant failed to use due diligence in its attempt to secure the cooperation of the insured. We held that the insurer does not prove the exercise of due diligence simply by showing that one or more letters were directed to the insured requesting his attendance at the trial. We believe that this position is sound. Assuming that the insured received the written request (as we must in this case because of the presumption created by ORS 41.360 (24)),[1] his failure to appear may still not constitute a breach of the cooperation clause of the policy under some circumstances. Thus it may be that after the insured received the request he died or was incapacitated or could not attend without undue hardship. The cases generally support the view that the cooperation clause is not breached if the insured's failure to attend is not willful.[2] Some cases, perhaps a majority, require that insurer show prejudice to its position.[3] We need not decide whether these latter

[1] "41.360. All presumptions other than conclusive presumptions are satisfactory, unless overcome. They are disputable presumptions, and may be controverted by other evidence, direct or indirect, but unless so overcome, the jury is bound to find according to the presumption. The following are of that kind:
"* * * * *
"(24) A letter duly directed and mailed was received in the regular course of the mail."

[2] Commercial Standard Insurance Company v. Readnour, 241 F2d 14 (9th Cir 1956); Ford v. Providence Washington Insurance Co., 151 CA2d 431, 311 P2d 930 (1957); Farmers Exchange v. Konugres, 119 Colo 268, 202 P2d 959 (1949); American Surety Company v. Diamond, 1 NY2d 594, 136 NE2d 876 (1956). Where the breach is found to be willful the cooperation clause is held to have been breached. Williams v. Travelers Ins. Co., 330 Mass 476, 115 NE2d 378 (1953); Coleman v. New Amsterdam Casualty Co., 247 NY 271, 160 NE 367, 72 ALR 1443 (1928).

[3] Annot., 60 ALR2d 1146 (1958), Liability Insurance: Failure or Refusal of an Insured to Attend Trial or to Testify as Breach of

cases are sound. In the present case there is no evidence explaining why the insured did not appear. For the reasons expressed in our original opinion we believe that the insurer should have the burden of showing that the insured's failure to appear was in fact due to his non-cooperation.

In our former opinion we stated that "It appears that a representative of Farmers personally contacted the insured at his address in Eureka and supervised the execution of the agreement." Defendant contends that there was no evidence to support this statement. We inferred that Farmers was personally contacted from the circumstances surrounding the insured's execution of a reservation of rights agreement. A majority of the court believes that the inference is too tenuous to constitute evidence and that defendant's objection is well taken. We are of the opinion, however, that even in the absence of such evidence plaintiff is entitled to prevail for the reasons previously stated.

Subject to the correction noted, we adhere to our former opinion.

Chief Justice McAllister and Justice Perry adhere to the views expressed in the prior dissent of Justice Perry and therefore dissent from the foregoing opinion.

---

Co-operation Clause, at 1154 § 3(b). For a discussion of the standards applied by various courts in determining the breach of a cooperation clause, see Note, Liability Insurance Policy Defenses and the Duty to Defend, 68 Harv L Rev 1436 (1955) and Comment, A Solution to the Inequities From a Breach of the Cooperation Clause in Automobile Liability Insurance, 2 Houston L Rev 92 (1964).