Argued January 29, affirmed March 26, 1973

# THE AMERICAN STAR INSURANCE COMPANY, *Appellant, v.* ALLSTATE INSURANCE COMPANY ET AL, *Respondents.*

508 P2d 244

*George Wittemyer, P.C.,* Portland, argued the cause for appellant. With him on the briefs were William E. Tassock and Barzee, Leedy & Tassock, Portland.

*James H. Clarke,* Portland, argued the cause for respondent Allstate Insurance Company. With him on the brief were McColloch, Dezendorf, Spears & Lubersky and Richard S. Borst and Richard H. Williams, Portland.

*Al J. Laue,* Assistant Attorney General, Salem, argued the cause for respondent State of Oregon. With him on the brief were Lee Johnson, Attorney General, and John W. Osburn, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and FOLEY and THORNTON, Judges.

THORNTON, J.

This is a declaratory judgment proceeding in which plaintiff, American Star Insurance Company, seeks contribution on two insurance claims from either

Allstate Insurance Company, the State Highway Commission, or both. The trial court denied plaintiff's claim for contribution, and American Star appeals.

This proceeding arises from two accidents, both of which occurred on defendant Commission's right-of-way property. The first accident, involving one Exe, was on March 13, 1967. The second, in which one Zwetzig was injured, happened on February 24, 1968.

During the time period relevant to this case, American Star insured the Commission against liability arising specifically from accidents occurring on right-of-way property. The American Star policy limited its bodily injury liability to $1,000,000 per person.

Commission employes, learning of the Exe and Zwetzig accidents, notified American Star pursuant to this insurance policy. American Star eventually settled both claims, paying $27,500 on the Exe claim on February 14, 1969, and $800 on the Zwetzig claim on December 13, 1969. Another insurer, apparently representing a lessee of right-of-way property, contributed an additional $2,500 to the settlement of the Exe claim.

During this period Allstate Insurance Company also insured the Commission under a general liability policy providing for bodily injury coverage up to $500,000 per person. Allstate received no notice of the Exe and Zwetzig accidents until August 7, 1970, when a claims adjuster, representing American Star, wrote to Allstate informing it of the Exe claim and seeking contribution to the settlement. A second letter, dated October 29, 1970, notified Allstate of the Zwetzig claim.

Thus, Allstate received no notice of the Exe

claim until more than three years after the accident, and about a year and a half after the settlement. Notice on the Zwetzig claim came more than two and a half years after the accident, and about 10 months after the settlement. The Commission never notified Allstate of either accident.

Both the American Star and Allstate policies contained the following clauses:

"When an accident occurs written notice shall be given by or on behalf of the insured to the company or any of its authorized agents as soon as practicable. Such notice shall contain particulars sufficient to identify the insured and also reasonably obtainable information respecting the time, place and circumstances of the accident, the names and addresses of the injured and of available witnesses."

"If the insured has other insurance against a loss covered by this policy the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss."

American Star contends that under these facts, and the "other insurance" or prorata provision, it is entitled to contribution from Allstate of one-half of the settlement payments made on the Exe and Zwetzig claims. We do not reach the question of the reasonableness of the settlements, or the application of the so-called Lamb-Weston formula (see, *Lamb-Weston et al v. Ore. Auto Ins. Co.*, 219 Or 110, 341 P2d 110, 346 P2d 643, 76 ALR2d 485 (1959)). The trial judge found, and we agree, that Allstate has no obligation to make any contribution to American Star.

■ Allstate defended against American Star's demand for contribution on the basis of lack of timely notice of the accidents. Initially, American Star contends that Allstate waived this defense by also pleading another affirmative defense, that of excess coverage, in Allstate's original answer.

This contention has no merit. Allstate has consistently urged the defense of lack of notice in this case. *Great American Ins. v. General Ins.*, 257 Or 62, 475 P2d 415 (1970), is clearly distinguishable.

In the *Great American* case the defendant insurance company, which was seeking to deny liability, was held to have waived the defense of late notice because it had twice exclusively relied on another defense before ever raising the later notice argument. The Supreme Court said that the insurer had waived late notice since it had always been aware of that defense, and had knowingly chosen to defend on other grounds.

In contrast, here Allstate has always denied liability on the basis of late notice.

■ In addition to the "other insurance" and notice provisions in Allstate's insurance policy, the contract also provides:

> "No action shall lie against the company unless, as a condition precedent thereto, the insured shall have fully complied with all the terms of this policy * * *."

Thus, under the Allstate insurance contract with the Commission, notice given "as soon as practicable" is a condition precedent to Allstate's obligation to indemnify the Commission. *Oregon Farm Bureau v. Safeco*, 249 Or 449, 438 P2d 1018 (1968); *Hoffman v.*

*Employer's Liability Corp.,* 146 Or 66, 29 P2d 557 (1934).

■ The notice given to Allstate here, coming from two and one-half to more than three years after the accidents, and from almost a year to a year and one-half after settlement of the claims, does not satisfy Allstate's contract with the Commission.

The Commission does not deny that its agents knew of the Exe and Zwetzig accidents shortly after they occurred, nor that this knowledge is imputable to the Commission itself. *And see, Falk v. Sul America Terrestres,* 255 Or 246, 465 P2d 714 (1970); *Hoffman v. Employer's Liability Corp.,* supra.

■ Thus, the Commission's failure to notify Allstate of the accidents is unexcused and constitutes a breach of the insurance contract. *Oregon Farm Bureau v. Safeco,* supra.

■ Of course, American Star gave notice to Allstate through its claims adjuster. However, even though third-party notice may satisfy Allstate's contract provision (see, *Bailey v. Universal Underwriters Ins.,* 258 Or 201, 474 P2d 746, 482 P2d 158 (1971)), still, here the notice, from whatever source, was simply too tardy to comply with the notice requirement.

■ American Star, however, contends that its failure to notify Allstate is excused since it did not know of the existence of the Allstate policy. American Star relies on *Hoffman v. Employer's Liability Corp.,* supra.

In this case, failure to give notice is not excused. "* * * Where one insurance company is demanding contribution from another, it is elementary that a right to contribution can rise no higher than- the

right of the alleged insured to compel his insurer to cover the loss * * *." *Oregon Farm Bureau v. Safeco,* supra, 249 Or at 453. Here, the Commission could not compel indemnification from Allstate, since the Commission gave no notice.

■ In any event, the doctrine of reasonable excuse for failure to give notice only applies when "reasonable diligence" has been exercised to discover the accident and potential claim. *Hoffman v. Employer's Liability Corp.,* supra. As to American Star, even assuming that the Commission's failure to notify might not totally bar American Star's right to contribution from Allstate, still American Star did not exercise "reasonable diligence." American Star never inquired into the possibility of other insurance, and its neglect only compounds that of the Commission.

Thus, American Star is not entitled to any contribution from Allstate. However, the plaintiff also seeks contribution from the Commission.

As noted above, the Commission gave timely notice of the accidents to American Star. The Commission never notified American Star of the policy with Allstate, and American Star never inquired of the Commission as to the existence of any "other insurance."

American Star contends that since the Commission failed to inform the company of Allstate's policy the Commission should contribute one-half of the settlement payments.

The courts of this state have never decided whether a prorata or "other insurance" clause places a burden on the insured to locate the "other insurance" and notify all insurers, or whether such a clause demands of an insurer, seeking to deny some liability, an affirmative duty to inquire as to "other insurance."

Plaintiff cites three cases from other jurisdictions which it claims hold that the duty is that of the insured. *Air etc. Co. v. Employers' Liab. etc. Corp.,* 91 Cal App2d 129, 204 P2d 647 (1949); *Baysdon v. Insurance Co.,* 259 NC 181, 130 SE2d 311 (1963); *Friedfeld v. Royal Indemnity Company,* 167 So2d 586 (Fla App 1964), *cert denied* 174 So2d 30 (Fla 1965).

We will discuss these cases in some detail. The first two cases, *Baysdon* and *Air,* do not squarely confront the issue which faces us on this appeal, and *Baysdon,* if anything, supports the defendant Commission.

In *Baysdon* three insurers held fire insurance coverage on the same insured property. All three policies contained prorata or "other insurance" clauses.

After a fire loss, one insurer, Nationwide, paid on the claim, but only to the extent of its prorata share.

The insured sued all three of the companies seeking indemnification for his entire loss. The trial court completely exonerated two of the companies, Great American and Home Insurance, holding that their policies were not "in force" at the time of the loss since the insured was in default on his premium payments. The court then held that Nationwide was liable for the entire loss within its policy limits, and not just for its prorata share.

On appeal the court simply construed the Great American and Home Insurance policies, and found that the insured's default in payments did not constitute an automatic cancellation. Thus Great American and Home Insurance were also liable to the insured for their prorata share.

This holding, obviously, relieved Nationwide of the responsibility for the entire loss.

At the trial court level this case would support the Commission. The trial court held that, despite the insured's negligent failure to maintain the Great American and Home Insurance coverages, and despite the prorata clauses, still Nationwide should bear the *entire* loss. The court did not shift any of the loss to the insured, as American Star here asks us to do.

The appellate opinion is inapposite since it does not deal with the conflicting rights and liabilities of the insured and his insurer, which is our problem here, but only with the overlapping liabilities of several insurance companies.

In the *Air* case, the court construed two conflicting clauses in two insurance policies.

In that case the insured sought indemnification for its loss from two insurers. At trial one insurer, Pacific Indemnity, successfully defended against all liability since the insured had failed to give notice of the accident, notice being a condition precedent under Pacific Indemnity's policy. (Pacific Indemnity is thus analogous to Allstate in the instant case.)

The insured did not appeal as to Pacific Indemnity.

The second insurer, Employers' Liability, then also sought to avoid all liability relying on an "excess" clause in its policy. The clause provided that if other "valid insurance" covered a loss, then Employers' Liability coverage would be null and void, unless, and to the extent that, Employers' Liability policy limits were "in excess" of the other insurance.

Employers' Liability claimed that Pacific Indemnity was another valid insurer, and that therefore Employers' Liability coverage was null and void. The court rejected this argument holding that Pacific In-

demnity was not another *valid* insurer since it had received no notice.

However, the court then proceeded to determine the respective liabilities of Pacific Indemnity and Employers' Liability, construing and reconciling the "excess" clause of Employers' Liability and a prorata clause in Pacific Indemnity's policy. The court found that each insurer should bear one-half of the loss.

Of course, Pacific Indemnity had already been removed from the case, so that the insured, in fact, only obtained indemnification for one-half of the loss from Employers' Liability.

Plaintiff contends that this result supports his position in the instant case. However, we are not persuaded that this should be the rule under the facts here. The opinion focuses exclusively on the respective liabilities of the insurance companies. The court did not discuss why the insured should bear any part of the loss, apparently just assuming this result.

We cannot accept this assumption.

In *Friedfeld* two insurers covered the same risk, and both policies contained prorata clauses. The insured suffered a loss and then notified one insurer, Royal, but not the other, Eagle.

Royal sought to limit its liability to its prorata share. Eagle, of course, was not liable at all since notice was a precondition to its contract duty to indemnify.

The court sustained Royal's position, thus holding that the insured would have to bear the loss above Royal's prorata share. This is the result sought by plaintiff in the instant case.

However, we are unpersuaded. The *Friedfeld*

opinion is based on a construction of the prorata clause which conflicts with that used in *Oregon Farm Bureau v. Safeco, supra,* 249 Or at 451-52. The usual clause, which is set out supra, applies only to "all valid and collectible insurance." The Eagle insurance had become uncollectible due to the insured's failure to give notice of the claim.

The court held, however, that the phrase "valid and collectible" applied to the time of the *accident,* that then Eagle's policy was collectible, and that therefore Royal was only liable prorata.

As we have just pointed out, this construction of the phrase "valid and collectible" is contrary to that given in *Oregon Farm Bureau v. Safeco, supra.*

The *Friedfeld* opinion provides no further rationale for its decision. The court does not examine the rights of insured and insurer but only construes the contract clause. The facts do not disclose whether Royal sought to discover Eagle's policy, or whether the insured knew of both policies and deliberately failed to notify Eagle at the expense of Royal.

For the reasons stated above, we would not follow the *Friedfeld* and *Air* decisions.

■ We hold that at least where, as here, the insurer made no inquiry of its insured seeking to discover other insurance, and the insured made no deliberate, knowing election of which insurer to notify, but was only lax in not notifying all potential insurers, that the insurer may not demand contribution from the insured.

In construing the common clause in insurance contracts requiring cooperation of the insured with his insurance company, our Supreme Court has held that the insurance company has an affirmative duty

to conduct a "good faith and diligent investigation." *Bailey v. Universal Underwriters Ins.*, supra, 258 Or at 221. *Johnson v. Doughty*, 236 Or 78, 385 P2d 760 (1963).

■ Thus, the insurance company may not avoid its liability under the policy, despite noncooperation, unless it affirmatively seeks cooperation from the insured.

We feel that here the insurance company should bear a similar burden. Normally the insurance company has resources and expertise superior to that of the insured.

Also, usually the insurance rates set by the company will not depend on the existence of any other applicable insurance. Other insurance will not reduce the insured's premium payments, but "* * * if, after the loss, he [the insurer] happens to find other insurance which relieves him in part from his liability, it is a piece of pure good fortune for him, his principal engagement having been to pay the loss in full up to the face of his policy * * *." *Wilks v. Allstate Insurance Company*, 195 So2d 390 (La App 1967), quoting from 169 ALR 387, 397-98 (1947).

■ For these reasons we hold that an insurer has an affirmative duty to inquire as to the existence of other applicable insurance. This duty would require, at a minimum, that the insurer made a good faith inquiry of the insured, seeking to learn of other insurance.

Here, the insurer, American Star, made absolutely no investigation to locate other applicable insurance. The Commission's premium payments to American Star did not depend on "other insurance" with Allstate.

Since American Star did not exercise due diligence in searching for "other insurance," it may not demand contribution from the Commission.

American Star claims that inquiry of the Commission as to "other insurance" would have been futile since the Commission did not know of Allstate's policy. However, American Star never sought to verify this futility, and did not prove that such inquiry would have been fruitless. American Star's only evidence was that the Commission did not have a general insurance manager, and that the property manager did not know of Allstate's policy. This is hardly futility resulting from any diligent investigation.

Summarizing, American Star Insurance Company may not recover contribution from either the State Highway Commission or Allstate Insurance Company.

Affirmed.

SCHWAB, C.J., specially concurring.

I would only note that absent the holding in *Oregon Farm Bureau v. Safeco*, 249 Or 449, 438 P2d 1018 (1968), we might well find that equitable principles would dictate that if the settlements made by American Star Insurance Company were proper, Allstate Insurance Company should contribute.